STATE OF NORTH CAROLINA v. REAL AUBIN

No. 9012SC8

(Filed 20 November 1990)

1. **Searches and Seizures § 12 (NCI3d)— investigative stop— reasonable suspicion of impaired driving**

An officer had a reasonable suspicion that defendant was operating his vehicle while impaired so that an investigative stop of defendant's vehicle was lawful where the officer observed defendant through his rear view mirror slowing his speed on I-95 to approximately 45 miles per hour and weaving within his lane.

**Am Jur 2d, Searches and Seizures §§ 42, 43, 45, 99.**

**Validity, under Federal Constitution, of warrantless search of motor vehicle— Supreme Court cases. 89 L.Ed.2d 939.**

STATE v. AUBIN

[100 N.C. App. 628 (1990)]

2. **Searches and Seizures § 12 (NCI3d) — investigative stop — questions not impermissible**

An officer did not exceed the permissible scope of his initial stop of defendant's vehicle to investigate whether defendant was driving while impaired when he asked defendant about his plans for returning the rental car he was driving to Newark, New Jersey, whether he still lived in Quebec, Canada, what he did for a living, and how the weather was in Florida.

**Am Jur 2d, Searches and Seizures §§ 42, 43, 45, 99.**

**Validity, under Federal Constitution, of warrantless search of motor vehicle — Supreme Court cases. 89 L.Ed.2d 939.**

3. **Searches and Seizures § 14 (NCI3d) — consent to search — voluntariness**

The trial court did not err in concluding that defendant voluntarily consented to a search of his car for contraband after an investigatory stop based on a suspicion that defendant was driving while impaired where the evidence supported findings by the court that defendant on three occasions orally gave the officer permission to search his car with no apparent reservations, that defendant was not held in the car for any improper length of time and was not subjected to any pressure by the officer, that defendant displayed an educated and understanding use of the English language during the stop, that the officer did not restrain defendant's movements during the search, and that defendant was in sole possession of his keys, license and identification papers throughout the search. The fact that defendant may have had some difficulty understanding the consent form, which he did not sign, did not require the conclusion that he did not intelligently and voluntarily consent to the search.

**Am Jur 2d, Searches and Seizures §§ 46, 47, 100.**

**Validity, under Federal Constitution, of warrantless search of motor vehicle — Supreme Court cases. 89 L.Ed.2d 939.**

4. **Searches and Seizures § 38 (NCI3d) — consent to search car — lifting of back seat**

An officer did not exceed the scope of defendant's oral consent to a search of his car for contraband when he lifted

STATE v. AUBIN

[100 N.C. App. 628 (1990)]

the corner of the back seat out of position and discovered cocaine under the seat.

**Am Jur 2d, Searches and Seizures §§ 46, 47, 100.**

**Validity, under Federal Constitution, of warrantless search of motor vehicle—Supreme Court cases. 89 L.Ed.2d 939.**

APPEAL by defendant from judgment entered 5 September 1989 in CUMBERLAND County Superior Court by *Judge Gregory A. Weeks.* Heard in the Court of Appeals 25 September 1990.

Defendant was arrested and charged with trafficking in cocaine by possession of 400 or more grams, trafficking in cocaine by transportation of 400 or more grams, and intentionally keeping or maintaining a motor vehicle for keeping or selling controlled substances. He pled guilty to trafficking by possession and trafficking by transportation, reserving his right to appeal the denial of his pretrial motion to suppress evidence and statements.

At the suppression hearing (Judge Giles R. Clark presiding), State's evidence tended to show that defendant was stopped while driving north on I-95 in Cumberland County by Trooper L. E. Lowry. Lowry was in pursuit of another vehicle when he observed in his rear view mirror that defendant's car was slowing markedly and weaving within its lane. Lowry then slowed his vehicle, eventually pulling off to an emergency lane to allow defendant to pass. He then pulled back onto the highway behind defendant, drove up on the left side to observe the driver, fell back behind defendant's car, and activated his blue light. Defendant pulled off to the side of the road.

Lowry then approached the driver's window and asked for his license and registration. Defendant produced a Canadian driver's license written in French and a rental car agreement. The weather was windy, so Lowry asked defendant to move to his patrol vehicle so he could determine in a closed space whether defendant had any odor of alcohol about him. When they were in the car, Lowry told defendant he had been stopped because of his erratic driving, and defendant responded that he was okay. Lowry spoke to defendant about his travels, and was told that he had flown to Florida from Montreal, and was returning the rental vehicle to Newark, New Jersey. Lowry told defendant of a "program" where cars heading north were being searched for weapons and contraband,

and asked for his consent to search his car. Defendant said okay.

Lowry then filled out a consent to search form and pointed to the place for defendant to sign. Defendant did not sign the form, but stated "You're all right to look in the car," and "You can go and check my car. No problem. I don't understand you no way." The two then exited the car. Defendant's driver's license and the rental agreement were returned some time before they got out of the car.

Defendant unlocked the trunk and front passenger door for Lowry. Lowry searched the car. Defendant stood behind him, periodically making statements and asking questions unrelated to the search. Lowry opened the back passenger door and searched the back seat area, including lifting the bottom portion of the seat up and out of position. He noticed what appeared to be cocaine under the seat and arrested defendant.

Defendant's evidence focused on his claims that he had driven properly at all times and was stopped because he matched a drug courier profile, that he spoke little English and had difficulty understanding Lowry, and that he never consented to the scope of the search which was carried out.

The trial court denied defendant's motion on 10 March 1989. An order was filed on 19 June 1989, *nunc pro tunc*. Defendant then pled guilty pursuant to a plea arrangement, and was sentenced to 24 years' imprisonment and fined $100,000.00.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Francis W. Crawley, for the State.*

*Tharrington, Smith & Hargrove, by Wade M. Smith, Roger W. Smith, and C. Mark Holt, for defendant-appellant.*

WELLS, Judge.

Defendant brings forward 19 assignments of error from the trial court's order challenging the court's findings and conclusions regarding the initial stop of defendant and resulting questioning, the purported consent, and the scope of the search. We find no error.

[1] We first address the initial stop. An officer's stop of a car to investigate a potential traffic offense does not require probable cause, but it is governed by the reasonableness standards of the

Fourth Amendment. *State v. Jones*, 96 N.C. App. 389, 386 S.E.2d 217 (1989). This Court set out the guidelines for such stops in *State v. Morocco*, 99 N.C. App. 421, 393 S.E.2d 545 (1990):

> A police officer may conduct a brief investigative stop of a vehicle where justified by specific, articulable facts which give rise to a reasonable suspicion of illegal conduct. However, police may not make *Terry*-stops based on the pretext of a minor traffic violation.
>
> In determining the traffic stop was pretextual, the trial court should look at what a reasonable officer *would* do rather than what an officer *could* do. (Citations omitted).

The trial court made extensive findings of fact in concluding that Trooper Lowry did have a reasonable suspicion that defendant was operating his vehicle while under the influence and that a reasonable officer would have stopped him. The court found that Trooper Lowry observed defendant through his rear view mirror slowing his speed to approximately 45 miles per hour and weaving within his lane. Our review of the record reveals competent evidence to support the trial court's findings, and we are accordingly bound by them. *Morocco, supra.*

We also hold that these findings support the trial court's conclusions. In *Jones, supra*, we held that observations of a car going 20 miles an hour below the posted speed and weaving within its lane are sufficient to raise a reasonable suspicion that the driver is operating the vehicle while impaired. Given the public interest in removing impaired drivers from the highways, these observations are also sufficient to support a conclusion that a reasonable officer would have stopped defendant to investigate the cause of this erratic driving. *See Morocco, supra.*

[2] We next address defendant's contention that Trooper Lowry improperly detained and questioned him for purposes other than an investigation of impaired driving. The trial court found that Trooper Lowry asked for defendant's license and registration and was given a Canadian driver's license and a rental car agreement. Defendant was asked to move to Lowry's patrol vehicle so that Lowry could detect the presence of any alcohol on his person and to observe him walking to the car. The court also found that Lowry asked defendant about his residence and travel plans and was told that although defendant lived in Quebec, he was returning the

car to Newark. Lowry then handed defendant back his license and the agreement and asked for and received consent to search his car. The court then found that Lowry attempted to get defendant to sign a consent form, which defendant declined to do, but repeated his consent orally. Our review of the record again reveals competent evidence to support these findings.

We recognize that an investigative stop and inquiry must be reasonably related in scope to the initial justification for it. *State v. Jones, supra.* In *Jones*, this Court refused to adopt a rule which would limit an officer's ability to investigate suspicious matters uncovered during an investigatory stop. In *Morocco*, Trooper Lowry asked about the driver's vehicle and registration in the patrol car while filling out a warning ticket. We held that such "polite conversation" was not improper. In this case, Trooper Lowry asked defendant about his plans for returning the car, whether he still lived in Quebec, what he did for a living and how the weather was in Florida. As in *Morocco*, this conversation did not exceed permissible police behavior. Lowry's investigation was reasonable in subject matter and scope.

[3] Defendant also contends that he did not freely and voluntarily consent to the search of his car, and that if he did, the search exceeded the scope of the consent given. We disagree.

When the State relies on a purported consent to justify a warrantless search, it has the burden of proving that the consent was voluntary and not the result of express or implied coercion. *State v. Glaze*, 24 N.C. App. 60, 210 S.E.2d 124 (1974). Voluntariness is a question of fact to be determined from all the surrounding circumstances. *Id.* At a hearing to determine the voluntariness of a defendant's consent to a search of his property, the weight to be given the evidence is peculiarly a determination for the trial court, and its findings are conclusive when supported by competent evidence. *State v. Long*, 293 N.C. 286, 237 S.E.2d 728 (1977). *See also State v. Fincher*, 309 N.C. 1, 305 S.E.2d 685 (1983).

In this case, the trial court's findings of fact, supported by competent evidence, support the conclusion that defendant freely, intelligently, and voluntarily consented to the search of his car. The court's findings indicate that defendant responded three separate times with no apparent reservations that Trooper Lowry could search, look in, and check the car. They do not indicate that defendant was held in the car for any improper length of time, or was

subjected to any pressure from Trooper Lowry. While findings do indicate that defendant may have had some difficulty understanding the consent form, or the purpose for it, this does not require the conclusion that he did not intelligently and voluntarily consent to the search. The trial court specifically found that defendant displayed an educated and understanding use of the English language during the stop. Finally, the court found that Lowry did not threaten or harass defendant, did not restrain his movements during the search, and that defendant was in sole possession of his keys, license and identification papers throughout the search.

[4] These findings of fact also support the conclusion that Trooper Lowry's search of defendant's car did not exceed the scope of defendant's consent. In *Morocco, supra,* Lowry searched the trunk and back seat of defendant's vehicle, where he found a tote bag. This Court upheld the scope of the search, holding:

> The defendant's consent to search the automobile for contraband entitled Lowry to conduct a reasonable search anywhere inside the automobile which reasonably might contain contraband. . . .

Similarly, in *State v. Belk,* 268 N.C. 320, 150 S.E.2d 481 (1966), the Court held that defendant's consent to the officer's search of his trunk implied consent to search any part of his car. It found support for this holding in the fact that none of the defendants objected to the search once it was begun. In this case, defendant gave oral consent to a search of his car for contraband. He did not object in any way to what Trooper Lowry was doing. It was reasonable for Lowry to lift up the corner of the back seat in the progress of his search.

Defendant has also assigned error to the court's failure to make a long list of alternate and additional findings of fact. As stated above, we are bound by the trial court's findings of fact if they are supported by competent evidence. We have reviewed a videotape exhibit submitted at trial and do not find it so conclusively inconsistent with the trial court's findings that it would lead us to overrule any of them. Conflicts in the evidence at a suppression hearing are to be resolved by the trial court. *See State v. Johnson,* 322 N.C. 288, 367 S.E.2d 660 (1988). The court must make findings resolving conflicts in the evidence which are *material* to its decision. *See State v. Richardson,* 316 N.C. 594, 342 S.E.2d 823 (1986). In *State v. Ghaffar,* 93 N.C. App. 281, 377

S.E.2d 88 (1989), we vacated an order of the trial court because of insufficient findings on the questions of the officer's reasonable suspicion, the appropriateness of the investigatory detention, and the voluntariness of the consent. In this case, however, there are sufficient findings to support the conclusions deciding each issue. These assignments of error are overruled.

There is competent evidence in this record to support the trial court's findings, and these findings in turn support the court's conclusions.

No error.

Judges COZORT and LEWIS concur.