STATE OF NORTH CAROLINA v. JIM FRANKLIN BONDS

No. COA99-769

(Filed 15 August 2000)

**Search and Seizure— driving while impaired—investigatory stop—reasonable suspicion**

    The trial court did not err in a driving while impaired case by concluding that a police officer had reasonable suspicion to justify the investigatory stop of defendant's vehicle because: (1) the officer testified that he observed specific indicators of intoxication he was specifically trained to look for, including that defendant had a blank look on his face and stared straight ahead without making eye contact with the officer, defendant was driving at least ten miles per hour below the speed limit, and defendant's driver-side window was completely down in twenty-eight degree weather; and (2) just because most investigatory stops in the context of driving while impaired have involved weaving within a lane or weaving between lanes, it does not mean that only those cases will meet the reasonable suspicion standard.

    Appeal by defendant from judgment entered 18 February 1999 by Judge William Z. Wood, Jr. in Davidson County Superior Court. Heard in the Court of Appeals 26 April 2000.

    *Attorney General Michael F. Easley, by Special Deputy Attorney General Isaac T. Avery, III, for the State.*

    *Pete Bradley for defendant-appellant.*

LEWIS, Judge.

    On 27 December 1997, Officer Glenn Wyatt of the Lexington Police Department was patrolling Route 8 (Cotton Grove Road) when he came upon defendant's vehicle stopped at an intersection. Officer Wyatt noticed that defendant's driver-side window was rolled down all the way, even though the outside temperature was twenty-eight

degrees. Officer Wyatt also observed defendant had "a blank look on his face" and never turned his head to make eye contact with the officer. After the light changed, Officer Wyatt proceeded to follow defendant for approximately a half mile. The speed limit on this stretch of road was forty miles per hour, but defendant's speed never reached more than thirty miles per hour. As defendant reached the city limits sign (at which point Officer Wyatt testified he would no longer have jurisdiction), Officer Wyatt pulled him over on suspicion of driving while impaired. Defendant submitted to an intoxilyzer test and blew a .13, which is above the then legal limit of .08. He also had no valid driver's license at the time. Officer Wyatt then arrested defendant for driving while impaired and for driving without a license.

Defendant filed a motion to suppress all evidence obtained as a result of the investigatory stop, including the results of the intoxilyzer test. After hearing Officer Wyatt testify as to the grounds for his stopping defendant, the trial court denied defendant's motion. Defendant then pled guilty to driving while impaired in return for the State dropping the charge of driving without a licence, but reserved his right to appeal.

The only issue on appeal is whether Officer Wyatt had sufficient grounds to justify pulling over defendant. Before a police officer may stop a vehicle and detain its occupants without a warrant, the officer must have a reasonable suspicion that criminal activity may be afoot. *Terry v. Ohio*, 392 U.S. 1, 30, 20 L. Ed. 2d 889, 911 (1968). This reasonable suspicion must be more than just a "hunch"; it must be based upon specific, articulable facts that, when taken together with the reasonable inferences from those facts, reasonably justify the seizure. *Id.* at 21, 20 L. Ed. 2d at 906. Moreover, the reasonableness standard must be judged objectively and "viewed as a whole 'through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.' " *State v. Thompson*, 296 N.C. 703, 706, 252 S.E.2d 776, 779 (1979) (quoting *United States v. Hall*, 525 F.2d 857, 859 (D.C. Cir. 1976)), *cert. denied*, 444 U.S. 907, 62 L. Ed. 2d 143 (1979).

At the suppression hearing, Officer Wyatt articulated three reasons for suspecting defendant may be driving while impaired. First, defendant had a blank look on his face and stared straight ahead. Second, defendant was driving at least ten miles per hour below the speed limit. Third, defendant's driver-side window was completely down in twenty-eight degree weather. Officer Wyatt explained he had

been taught that one of the reasons drivers may roll down their windows in cold weather is "to refresh theirself [sic] because they have too much alcohol in their system." We conclude these reasons are sufficient to satisfy the reasonable suspicion standard.

Officer Wyatt had been specifically trained to look for certain indicators of intoxication, including some of the ones here. He had ten years of experience in this area and had even made several arrests using the exact same indicators that were present here. As stated previously, an officer's training and experience must be considered in analyzing the "reasonable suspicion" standard. *Thompson*, 296 N.C. at 703, 252 S.E.2d at 779. Additionally, we note that the National Highway Traffic Safety Administration ("NHTSA"), in its recent publication "The Visual Detection of DWI Motorists," states that driving ten miles per hour or more under the speed limit, plus staring straight ahead with fixed eyes, indicates a fifty percent chance of being legally intoxicated. Http://www.nhtsa.dot.gov/people/injury/alcohol/dwi/dwihtml/index.htm. This statistic lends objective credibility to Officer Wyatt's suspicions, demonstrating that his suspicions were in fact reasonable—something more than just a "hunch."

Defendant points out, and we acknowledge, that the three indicators cited by Officer Wyatt, in and of themselves, are wholly innocent actions that can be explained by reasons unrelated to intoxication. However, our courts have repeatedly emphasized that the indicators should not be viewed in isolation, but as a totality. *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994). Furthermore, whether a particular indicator is innocent in nature is immaterial; the relevant inquiry is " 'the degree of suspicion that attaches to particular types of noncriminal acts.' " *United States v. Sokolow*, 490 U.S. 1, 10, 104 L. Ed. 2d 1, 12 (1989) (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13, 76 L. Ed. 2d 527, 552 n.13 (1983)). The three indicators here, though noncriminal in nature, elicited enough reasonable suspicion when combined to warrant the investigatory stop.

Defendant also suggests that weaving, or some other form of aberrant driving, is required in order to satisfy the reasonable suspicion standard. To that effect, defendant correctly points out that most North Carolina cases upholding investigatory stops in the context of driving while impaired have involved weaving within a lane or weaving between lanes. *See, e.g., State v. Aubin*, 100 N.C. App. 628, 397 S.E.2d 653 (1990) (weaving within lane plus driving only forty-five miles per hour on the interstate), *disc. review denied*, 328 N.C. 334,

402 S.E.2d 443, *cert. denied*, 502 U.S. 842, 116 L. Ed. 2d 101 (1991); *State v. Jones*, 96 N.C. App. 389, 386 S.E.2d 217 (1989) (weaving within lane plus driving twenty miles per hour below the speed limit), *disc. review denied*, 326 N.C. 366, 389 S.E.2d 809 (1990); *State v. Adkerson*, 90 N.C. App. 333, 368 S.E.2d 434 (1988) (weaving within lane and off road). But just because most of our cases have involved weaving does not mean that *only* those cases involving weaving will meet the reasonable suspicion standard. Our Supreme Court recently concluded that a legal turn immediately prior to a DWI checkpoint, in and of itself, could be sufficient grounds to justify an investigatory stop. *State v. Foreman*, 351 N.C. 627, 632-33, 527 S.E.2d 921, 923 (2000). A driver's intoxicated appearance, as observed by an officer driving by, has also been held to be sufficient. *State v. White*, 311 N.C. 238, 244, 316 S.E.2d 42, 46 (1984). Thus, contrary to defendant's assertion, weaving is not a threshold requirement in order to satisfy the reasonable suspicion standard.

In sum, we conclude that Officer Wyatt did have reasonable grounds to stop defendant. Defendant's slow driving, his blank look and staring straight ahead, and his window being down in below-freezing weather, when viewed together, constituted reasonable and articulable grounds to justify Officer Wyatt's stopping the car.

Affirmed.

Judges MARTIN and WALKER concur.