STATE OF NORTH CAROLINA v. SCOTT EDWARD THOMPSON

No. COA01-1553

(Filed 19 November 2002)

**1. Motor Vehicles; Search and Seizure— driving while impaired—reasonable suspicion for investigatory stop**

The trial court did not err in a DWI action by denying defendant's motion to suppress evidence of the stop of his vehicle because there were sufficient articulable acts for a reasonable suspicion that defendant was committing a motor vehicle violation where officers observed defendant weave within his lane and the tires of his car touch the dividing line of the highway, and the officers observed defendant exceeding the speed limit.

**2. Motor Vehicles— Intoxilyzer—informing defendant of rights**

The trial court did not err in a DWI action by denying defendant's motion to suppress the Intoxilyzer test results where the officer put a copy of defendant's rights in front of defendant as the officer read the rights, defendant's signature was obtained, and defendant was provided with a copy of the rights form after the test. Nothing in the statutes or the case law mandated that the officer physically hand defendant a copy of his rights.

Appeal by defendant from judgment entered 10 August 2001 by Judge Sanford L. Steelman, Jr. in Union County Superior Court. Heard in the Court of Appeals 18 September 2002.

*Attorney General Roy Cooper, by Special Deputy Attorney General Isaac T. Avery, III and Assistant Attorney General Patricia A. Duffy, for the State.*

*W. David McSheehan and Bobby Khan for defendant-appellant.*

WALKER, Judge.

Defendant was charged with and found guilty of driving while impaired (DWI) in Union County District Court on 13 March 2001. He appealed to Union County Superior Court, where he was convicted by a jury. He received a sixty-day suspended sentence along with twelve months of supervised probation and was assessed $417.00 in fines and costs.

At trial, the State's evidence tended to show the following: In the early morning hours of 24 February 2001, Officers James Hyatt and Mike Buesing of the Wingate Police Department were driving west on Highway 74 during their routine patrol. They observed defendant's vehicle traveling at what appeared to be a high rate of speed in the eastbound lane. After observing the vehicle for several seconds, Officer Buesing testified that he estimated defendant's speed to be fifty miles per hour in a thirty-five miles per hour zone. Similarly, Officer Hyatt testified that he estimated the defendant's speed to be about fifty-five miles per hour. Officer Buesing was operating the radar unit which verified defendant was driving above the posted speed limit. Because Officer Buesing had not completed the necessary training to receive his radar certification, the officers could not stop defendant based on this radar reading.

However, prompted by their estimations of defendant's speed, the officers turned into the eastbound lane of Highway 74 and followed defendant for five-tenths of a mile to one mile. The officers observed him weave within his lane and touch the left line separating the two eastbound lanes at least twice with both left tires. Based on these observations, Officer Buesing executed a traffic stop of defendant.

While talking to defendant during the traffic stop, Officer Buesing noticed his glassy eyes and a strong odor of alcohol about him. Officer Buesing testified that when he asked defendant to step out of his vehicle, defendant grabbed the door in a manner which indicated he needed help exiting. Officer Buesing further testified that defendant performed poorly on each of the field sobriety tests administered and that he was both talkative and argumentative. As a result of his

observations, Officer Buesing was of the opinion that defendant had consumed a sufficient amount of alcoholic beverages to "appreciably impair both his mental and physical faculties to operate a motor vehicle."

Defendant was arrested for DWI and was taken to the intoxilyzer room of the Union County jail. Officer Buesing testified that he "placed a copy of the rights in front of [defendant]" for him to follow as he read defendant his intoxilyzer rights. Defendant then signed a copy of the rights form and requested that a witness be present before the intoxilyzer test was administered. After defendant's witness arrived, Officer Buesing administered the intoxilyzer test and gave defendant a copy of his intoxilyzer rights. Defendant's blood alcohol reading was 0.10.

**[1]** Defendant contends the trial court erred in denying his motion to suppress the stop of his vehicle based on the lack of reasonable, articulable suspicion of a motor vehicle violation. We first note that "[o]ur review of a trial court's denial of a motion to suppress is strictly limited to a determination of whether it's [sic] findings are supported by competent evidence, and in turn, whether the findings support the trial court's ultimate conclusion." *State v. Allison*, 148 N.C. App. 702, 704, 559 S.E.2d 828, 829-30 (2002) (*citing State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)).

Our Supreme Court recently reaffirmed the standard governing the requirements for an investigatory stop of a vehicle:

> "An investigatory stop must be justified by 'a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.' A court must consider 'the totality of the circumstances—the whole picture' in determining whether a reasonable suspicion to make an investigatory stop exists. The stop must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training. The only requirement is a minimal level of objective justification, something more than an 'unparticularized suspicion or hunch.' "

*State v. Steen*, 352 N.C. 227, 238-39, 536 S.E.2d 1, 8 (2000) (citations omitted), *cert. denied*, 531 U.S. 1167, 148 L. Ed. 2d 997 (2001).

In *State v. Watson*, 122 N.C. App. 596, 472 S.E.2d 28 (1996), a highway patrolman observed a vehicle weaving within its lane and driving

on the dividing line of a dual-lane highway at 2:30 a.m. The patrolman turned, followed the vehicle, and observed defendant's driving behavior for about 15 seconds, after which he executed a traffic stop of the vehicle. *Id.* at 598, 472 S.E.2d at 29. The patrolman testified that he observed a strong odor of alcohol on defendant whose eyes were red and glassy. *Id.* On the basis of his observations, the patrolman arrested defendant for DWI. *Id.* Although defendant argued that the patrolman lacked a reasonable, articulable suspicion of a traffic violation when he executed the stop, this Court held that the patrolman's observations provided sufficient grounds to form a suspicion of impaired driving under the totality of the circumstances. *Id.* at 599-600, 472 S.E.2d at 29-30.

The facts of this case are very similar to those in *Watson.* Both vehicles were being operated in the early morning hours. The officers in both cases observed the drivers weave within their lane, touching the dividing line of the highways. Moreover, the officers in this case had the additional factor of having observed the defendant exceeding the speed limit. Thus, consistent with the requirements set forth in *Steen* and this Court's ruling in *Watson,* we conclude that sufficient articulable facts existed to allow the officers to form a reasonable suspicion that defendant was committing a motor vehicle violation and that the trial court did not err in denying defendant's motion to suppress this evidence.

[2] Defendant next argues that the trial court erred in denying his motion to suppress the intoxilyzer test results due to Officer Buesing's failure to comply with N.C. Gen. Stat. § 20-16.2(a) (2001). N.C. Gen. Stat. § 20-16.2(a) provides that "before any type of chemical analysis is administered the person charged shall be taken before a chemical analyst authorized to administer a test of a person's breath, who shall inform the person orally and also give the person a notice in writing . . ." of his rights associated with such test. This Court has held that an officer administering an intoxilyzer test fully complies with the statutory requirements of N.C. Gen. Stat. § 20-16.2(a) by placing a written copy of the rights form before the defendant as the officer reads them aloud and then obtaining the defendant's signature on a copy of the rights form prior to administering the intoxilyzer test. *Watson, supra; see also State v. Carpenter,* 34 N.C. App. 742, 239 S.E.2d 596 (1977) (holding that a breathalyzer operator fully complied with N.C. Gen. Stat. § 20-16.2(a) when he orally advised the defendant of his rights and placed a form containing those same rights in front of the defendant, even though the offi-

cer was unsure whether defendant actually read the form), *disc. review denied*, 294 N.C. 183, 241 S.E.2d 518 (1978).

In this case, Officer Buesing testified that he "placed a copy of the rights in front of [defendant]" as he read the intoxilyzer rights to him and then obtained defendant's signature before administering the test. After completing the intoxilyzer test, Officer Buesing provided defendant with a copy of the rights form. Although defendant argues that Officer Buesing was required to physically hand him a copy of his rights form prior to administering the test, we find nothing in N.C. Gen. Stat. § 20-16.2(a) or our appellate decisions that mandates such a requirement. Therefore, we conclude the trial court did not err in denying defendant's motion to suppress the intoxilyzer test results.

We have carefully reviewed defendant's remaining assignments of error and find them to be without merit.

No error.

Judges McGEE and HUNTER concur.