STATE OF NORTH CAROLINA v. MEGAN SUE OTTO

No. COA11-189

(Filed 15 November 2011)

**1. Motor Vehicles—driving while impaired—trooper's knowledge private club served alcohol**

The trial court erred in a driving while impaired case by finding that a trooper "knew" that a private club, approximately one-half mile from where defendant was stopped, served alcohol to the extent it determined that the trooper had actual knowledge or reasonably could have known that alcohol consumption occurred at the private club on that evening.

**2. Motor Vehicles—driving while impaired—reasonable articulable suspicion to stop vehicle—weaving in own lane**

The trial court erred in a driving while impaired case by concluding a trooper had a reasonable articulable suspicion for stopping defendant's vehicle. Based on the totality of circumstances, the trooper stopped defendant after he observed her weaving within her lane of travel at 11:00 p.m. near a facility that he "had heard" might be serving alcohol, but had no direct knowledge of alcohol service occurring on any occasion, let alone on that evening.

Judge ERVIN dissenting.

Appeal by Defendant from judgment entered 30 September 2010 by Judge W. Russell Duke, Jr. in Pitt County Superior Court. Heard in the Court of Appeals 31 August 2011.

*Attorney General Roy Cooper, by Assistant Attorney General William P. Hart, Jr., for the State.*

*The Robinson Law Firm, P.A., by Leslie S. Robinson, for Defendant.*

BEASLEY, Judge.

Megan Sue Otto (Defendant) appeals from a judgment imposing a suspended sentence based on her conviction for driving while impaired. On appeal, Defendant contends that the trial court erred by denying her motion to suppress on the grounds that the arresting officer lacked the required reasonable suspicion immediately prior to the stop that she was driving while impaired. For the following reasons, we reverse.

On 29 February 2008, Trooper Ashley Brent Smith of the North Carolina Highway Patrol noticed that Defendant was weaving from the center line to the fog line. Defendant's vehicle did not leave the roadway or cross the center line, nor did Defendant commit any additional traffic violations, but Trooper Smith activated his blue lights after following her "for approximately three-quarters of a mile." When Trooper Smith initially observed Defendant, she was approximately one-half mile from a private club known as the Rock Springs Equestrian Club (Rock Springs) and was coming from the direction of that facility. Trooper Smith was aware that a Ducks Unlimited banquet was being held at Rock Springs that evening. Despite the fact that Trooper Smith did not know if alcohol would be served at Rock Springs that evening, he had previously heard others indicate that functions at which alcohol was served were held at Rock Springs on occasion. Trooper Smith issued Defendant a citation for driving while subject to an impairing substance.

On 2 December 2008, Defendant filed a motion to suppress any evidence obtained as a result of her initial detention on the grounds that the evidence in question had been obtained as the result of a "substantial violation" of her rights under North Carolina statutes and the state and federal constitutions. A hearing on Defendant's motion

was conducted before Judge Charles M. Vincent in Pitt County District Court, after which Judge Vincent stated that he intended to grant Defendant's motion. The State sought review of Judge Vincent's decision in the Pitt County Superior Court.

On 22 May 2009, a hearing on Defendant's suppression motion was held before the Pitt County Superior Court. On 23 August 2009, the superior court entered an order reversing Judge Vincent and remanding this case to the Pitt County District Court for further proceedings. On remand, Defendant was convicted of driving while impaired in the Pitt County District Court and appealed the resulting judgment to the Pitt County Superior Court.

On 3 December 2009, Defendant filed a motion seeking suppression of the evidence obtained as a result of her arrest which was heard on 30 September 2010. The superior court entered a written order denying Defendant's suppression motion on 13 January 2011. After the denial of her suppression motion, Defendant entered a plea of guilty to driving while impaired while reserving her right to seek appellate review of the order denying her suppression motion. In light of Defendant's plea, the superior court found that Defendant was subject to Level V punishment and sentenced her to sixty days imprisonment, which was suspended on the condition that Defendant successfully complete a twenty-four month period of supervised probation. Defendant noted an appeal to this Court from the superior court's judgment.

I.

**[1]** Defendant first argues that the trial court erred in finding that Trooper Smith "knew" that Rock Springs serves alcohol. We agree.

In reviewing a ruling on a motion to suppress, the trial court's findings of fact "are conclusive and binding on the appellate courts when supported by competent evidence." *State v. Brooks*, 337 N.C. 132, 140-41, 446 S.E.2d 579, 585 (1994).

In its order, the trial court found, in pertinent part, that:

1. On 29 February 2008, at approximately 10:59 p.m., Trooper A.B. Smith . . . was traveling north on Highway 43 in Pitt County when he received a phone call . . . [and] pulled off of Highway 43[.]

2. As Trooper Smith was ending the telephone conversation . . . he observed a burgundy Ford Explorer traveling down High-

way 43 coming from the direction of the Rock Springs Equestrian Center.

3. By chance, Trooper Smith pulled back onto Highway 43 . . . behind the burgundy Ford Explorer. There were no other vehicles between [his] patrol car and the Ford Explorer.

4. Trooper Smith remained behind the Ford Explorer for approximately three-quarters of a mile, during which time [he] observed the vehicle weaving constantly and continuously within the width of the travel lane . . . .

5. Trooper Smith knew that there was a Ducks Unlimited Banquet being held at the Rock Springs Equestrian Center that evening, which was approximately four-tenths to five-tenths of a mile away from where he initially observed the vehicle, and Trooper Smith knew that Rock Springs Equestrian Center serves alcohol.

6. As a result of his observations, Trooper Smith activated his blue lights and emergency equipment.

The trial court's Finding of Fact number 5 which state that Trooper Smith "knew" that Rock Springs serves alcohol is not supported by the evidence. While Trooper Smith testified that he had heard from others that alcohol was sometimes served at Rock Springs, he had never been inside the facility or personally observed alcohol being consumed there. Further, unlike an establishment which regularly serves alcohol such as a bar or restaurant, there was no basis upon which Trooper Smith could presume that alcohol was served that evening at an equestrian club. *State v. Jacobs*, 162 N.C. App. 251, 255, 590 S.E.2d 437, 441 (2004). As a result, the trial court's finding that Trooper Smith "knew" that alcohol was served at Rock Springs lacks competent evidentiary support to the extent that the trial court determined that Trooper Smith had actual knowledge or reasonably could have known that alcohol consumption occurred at Rock Springs on that evening.

II.

[2] Defendant next argues that the trial court erred in concluding that Trooper Smith had a reasonable, articulable suspicion for stopping her vehicle. We agree.

While a trial court's factual findings are binding on appeal if supported by competent evidence, the conclusions of law "are binding

upon us on appeal [only] if they are supported by the trial court's findings." *Brooks*, 337 N.C. at 141, 446 S.E.2d at 585. The prohibition against unreasonable search and seizure is guaranteed. U.S. Const., amend. IV. Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of a "person" within the meaning of this provision. *See Delaware v. Prouse*, 440 U.S. 648, 653, 59 L. Ed. 2d 660, 667 (1979); *Whren v. United States*, 517 U.S. 806, 809, 135 L. Ed. 2d 89, 95 (1996). "[R]easonable suspicion is the necessary standard for traffic stops[.]" *State v. Styles*, 362 N.C. 412, 415, 665 S.E.2d 438, 440 (2008). In *State v. Fields*, we held that there was no reasonable, articulable suspicion to stop a vehicle where defendant was stopped at 4:00 p.m. after an officer observed him weaving in his lane. 195 N.C. App. 740, 746, 673 S.E.2d 765, 768 (2009). Without any additional circumstances giving rise to a reasonable suspicion that criminal activity is afoot, stopping a vehicle for weaving is unreasonable.

> [W]eaving can contribute to a reasonable suspicion of driving while impaired. However, in each instance, the defendant's weaving was coupled with additional specific articulable facts, which also indicated that the defendant was driving while impaired. *See, e.g., State v. Aubin*, 100 N.C. App. 628, 397 S.E.2d 653 (1990) (weaving within lane, plus driving only forty-five miles per hour on the interstate), *appeal dismissed, disc. review denied*, 328 N.C. 334, 402 S.E.2d 433 (1991); *State v. Jones*, 96 N.C. App. 389, 386 S.E.2d 217 (1989) (weaving towards both sides of the lane, plus driving twenty miles per hour below the speed limit), *appeal dismissed, disc. review denied*, 326 N.C. 366, 389 S.E.2d 809 (1990); *State v. Adkerson*, 90 N.C. App. 333, 368 S.E.2d 434 (1988) (weaving within lane five to six times, plus driving off the road); *State v. Thompson*, 154 N.C. App. 194, 571 S.E.2d 673 (2002) (weaving within lane, plus exceeding the speed limit).

*Id.* at 744, 673 S.E.2d at 768. When determining if reasonable suspicion exists under the totality of the circumstances, a police officer may also evaluate factors such as traveling at an unusual hour or driving in an area with drinking establishments. In *Jacobs*, 162 N.C. App. at 255, 590 S.E.2d at 441, the defendant was weaving within his lane and touching the designated lane markers on each side of the road. We concluded that the defendant's weaving combined with the fact that he was driving at 1:43 a.m., which we deemed an "unusual hour," in an area near bars was sufficient to establish a reasonable suspicion of driving while impaired. *Id.* Similarly, we found that the facts in

*State v. Watson*, 122 N.C. App. 596, 599-600, 472 S.E.2d 28, 30 (1996), established a reasonable suspicion, due to the fact that the defendant was weaving within his lane and driving on the center line of the highway at 2:30 a.m. on a road near a nightclub.

Based on the totality of the circumstances here, we find that Trooper Smith did not form a reasonable, articulable suspicion to stop Defendant; consequently the stop occurred in violation of Defendant's Fourth Amendment rights. In reviewing the trial court's pertinent findings of fact, Trooper Smith stopped Defendant after he observed her weaving within only her lane of travel at 11:00 p.m. (which is not an "unusual hour") near a facility that he "had heard" might be serving alcohol, but had no direct knowledge of alcohol service occurring on any occasion, let alone on the evening in question. Moreover, Trooper Smith did not observe Defendant commit any traffic violations other than weaving within her own lane. We therefore conclude that Trooper Smith did not have a reasonable, articulable suspicion to stop Defendant.

Reversed.

Judge STEPHENS concurs.

Judge ERVIN dissents.

ERVIN, Judge, dissenting.

As a result of my determination that the trial court's findings of fact, when understood in conjunction with the evidence presented at the suppression hearing, support the trial court's conclusion that Trooper Smith had the necessary "reasonable articulable suspicion" that Defendant was operating a vehicle while subject to an impairing substance, I believe that the trial court did not err by denying Defendant's suppression motion. Given that the Court reaches a different conclusion, I respectfully dissent from its decision to overturn Defendant's conviction.

Applicable Legal Standard

"[R]easonable suspicion is the necessary standard for traffic stops." *State v. Styles*, 362 N.C. 412, 415, 665 S.E.2d 438, 440 (2008) (citations omitted). In *Styles*, the Supreme Court stated that:

The Fourth Amendment protects individuals "against unreasonable searches and seizures," U.S. Const. amend. IV, and the North Carolina Constitution provides similar protection, N.C. Const. art. I, § 20. A traffic stop is a seizure "even though the purpose of the stop is limited and the resulting detention quite brief." Traffic stops have "been historically reviewed under the investigatory detention framework first articulated in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Under *Terry* and subsequent cases, a traffic stop is permitted if the officer has a "reasonable, articulable suspicion that criminal activity is afoot."

*Styles*, 362 N.C. at 414, 665 S.E.2d at 439 (quoting *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 1396, 59 L. Ed. 2d 660, 667 (1979); *U.S. v. Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006); and *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 675, 145 L. Ed. 2d 570, 576 (2000)). Reasonable suspicion is a "less demanding standard than probable cause," *Wardlow*, 528 U.S. at 123, 120 S. Ct. at 675, 145 L. Ed. 2d at 576, and simply requires that investigatory stops "be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (citation omitted). "A court must consider 'the totality of the circumstances—the whole picture' in determining whether a reasonable suspicion to make an investigatory stop exists." *Watkins*, 337 N.C. at 441, 446 S.E.2d at 70 (quoting *U.S. v. Cortez*, 449 U.S. 411, 417, 101 S. Ct. 690, 695, 66 L. Ed. 2d 621, 629 (1981)).

<u>Finding that Trooper Smith "Knew"
that Rock Springs Served Alcohol</u>

In its order, the trial court found, in pertinent part, that:

2. As Trooper Smith was ending the telephone conversation[,] . . . he observed a burgundy Ford Explorer traveling down Highway 43 coming from the direction of the Rock Springs Equestrian Center.

. . . .

5. Trooper Smith knew that there was a Ducks Unlimited Banquet being held at the Rock Springs Equestrian Center that evening, which was approximately four-tenths to five-tenths of a mile away from where he initially observed the vehicle, and Trooper Smith knew that Rock Springs Equestrian Center serves alcohol.

In her brief, Defendant contends that the trial court's finding that Trooper Smith "knew" that the Rock Springs club serves alcohol lacked adequate evidentiary support. After carefully reviewing the record, I agree with Defendant and the Court that, while Trooper Smith testified that he had heard from others that alcohol was sometimes served at Rock Springs, he had no direct personal knowledge that such alcohol service actually occurred at the location in question. As a result, the trial court's finding that Trooper Smith "knew" that alcohol was served at Rock Springs lacks adequate evidentiary support to the extent that it constituted a determination that Trooper Smith had direct personal knowledge of the extent to which alcohol was served at that establishment. Instead, all that the trial court could appropriately find consistently with the record evidence was that Trooper Smith had heard that alcohol was sometimes served there. In view of the fact that the word "know" can be understood as having either of these two meanings,[1] I believe that, instead of totally disregarding the challenged finding, we should address the ultimate issue that is before us in this case by understanding the challenged finding to mean that Trooper Smith "knew" that alcohol was sometimes served at Rock Springs in the sense that he had heard that such was the case. Given that Trooper Smith was entitled to consider information that he received from others in deciding whether to stop Defendant, *Alabama v. White*, 496 U.S. 325, 330-31, 110 S. Ct. 2412, 2416, 110 L. Ed. 2d 301, 309 (1990) (stating that "[r]easonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability," so that, "if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable"), I believe that we are entitled to consider the fact that Trooper Smith had been informed that alcohol was sometimes served at Rock Springs in deciding whether he had "reasonable articulable suspicion" that Defendant was driving while subject to an impairing subject, with that fact being given appropriate weight in light of the absence of any indication in the record as to the source from which Trooper Smith obtained this information and the fact that Trooper Smith had no definitive knowl-

---

1. Among the alternative definitions for "know" are "to apprehend immediately with the mind or with the senses: perceive directly: have direct unambiguous cognition" and "to have acquaintance or familiarity with through experience or acquisition of information or hearsay." *Webster's Third New International Dictionary* 1252 (1966). As a result, interpreting the challenged finding of fact in the manner outlined in the text is fully consistent with ordinary English usage.

edge that alcohol was actually being served at Rock Springs on the evening in question.

## Validity of Trooper Smith's Decision to Stop Defendant

The trial court's findings of fact (understood as outlined above), which Defendant has not challenged on appeal, establish that:

1. Trooper Smith observed Defendant driving on Route 43 at 11:00 p.m.

2. Defendant was coming from the direction of Rock Springs, which was half a mile away, when Trooper Smith first saw her.

3. Trooper Smith knew that there was a Ducks Unlimited banquet at Rock Springs that night, and had heard from others that alcohol was sometimes served there.

4. Trooper Smith followed Defendant for about three-quarters of a mile, during which time Defendant's vehicle was "constantly weaving from the center line to the fog line."

5. Defendant did not cross the center line or leave the road, but her vehicle was continuously weaving from one side of her lane of travel to the other until Trooper Smith initiated a traffic stop.

I believe that the information available to Trooper Smith, as reflected in the trial court's findings and when considered in its entirety, gave him the required "reasonable suspicion" that Defendant was driving while impaired and, for that reason, provided ample justification for his decision to stop Defendant's vehicle.

In successfully urging the Court to reach a different conclusion, Defendant notes that, while Trooper Smith saw her weaving within her own lane of travel for three-quarters of a mile, he did not observe her violate any traffic laws, cross the center line, or go outside the fog line. According to Defendant, "there is not one case in our appellate case law that would support a reasonable suspicion for the stop of a vehicle that is traveling at the speed limit, weaves in her travel lane while entering two curves, but otherwise operates in a normal fashion and is not operating late at night or near any bars or areas known for drug activity." As a result, Defendant believes, and the Court appears to agree, that her challenge to the denial of her suppression motion "is governed by this Court's reasoning in [*State v.*] *Fields*, [195 N.C. App 740, 673 S.E.2d 765, *disc. review denied*, 363 N.C. 376, 679 S.E.2d 390 (2009),] and [*State v.*] *Peele*, [196 N.C. App 668, 675 S.E.2d

682, *disc. review denied*, 363 N.C. 587, 683 S.E.2d 383 (2009),] and . . . is clearly distinguishable from the 'weaving' cases [in which a] stop was upheld." I do not find this logic persuasive.

Although Defendant asserts that she only "weave[d] in her travel lane while entering two curves" and that she was "not operating [her vehicle] late at night or near any bars," the undisputed evidence as reflected in the trial court's findings does not support either of these contentions. As the trial court's unchallenged findings reflect, Defendant weaved continuously in her own lane for three-quarters of a mile. In addition, Defendant was weaving from one side of her lane across to the other and back again, rather than merely making slight adjustments as she entered a curve. When Trooper Smith initially observed her at 11:00 p.m., Defendant was just a half mile from an establishment at which Trooper Smith understood that alcohol was sometimes served on an evening when a Ducks Unlimited banquet was taking place at that location. As a result, I believe conclude that the evidence as reflected in the trial court's factual findings, when properly understood, demonstrates something more than an isolated instance of weaving in one's own lane under otherwise innocuous circumstances.

In light of the trial court's findings concerning these two issues, *Fields* and *Peele* are, contrary to the Court's apparent determination, readily distinguishable from the present case. In *Fields*, an officer observed the defendant swerve three times while driving over a distance of a mile and a half at around 4:00 p.m. *Fields*, 195 N.C. App 741, 673 S.E.2d at 766. Similarly, in *Peele*, the defendant engaged in "a single instance of weaving within his lane over a tenth of a mile" at about 7:50 p.m. *Peele*, 196 N.C. App at 669, 675 S.E.2d at 684. The defendants in *Fields* and *Peele* were not driving at 11:00 p.m. in the vicinity of a facility at which the investigating officer understood alcohol was sometimes served or, even more importantly, constantly weaving from side to side within their own lane for a distance of three-quarters of a mile.

The decisions of the Supreme Court and this Court have not, contrary to Defendant's contention and the Court's apparent conclusion, ever adopted a *per se* rule to the effect that weaving within one's own lane of travel may never, regardless of the totality of the surrounding circumstances, support a "reasonable suspicion" that criminal activity is afoot. On the contrary, we have observed that "most North Carolina cases upholding investigatory stops in the context of driving while impaired have involved weaving within a lane or weaving

between lanes." *State v. Bonds*, 139 N.C. App. 627, 629, 533 S.E.2d 855, 857 (2000). "In upholding the [trial] court's decision that reasonable suspicion of impaired operation existed in this case, we note that the overwhelming weight of authority from other jurisdictions holds that repeated intra-lane weaving can create reasonable suspicion of impaired operation." *State v. Pratt*, 182 Vt. 165, 168-69, 932 A.2d 1039, 1041 (2007) (collecting cases). "In addition, decisions from outside this jurisdiction have routinely held that weaving within one's lane for substantial distances are facts which give rise to a reasonable suspicion that one is driving under the influence." *People v. Perez*, 175 Cal. App. 3d Supp. 8, 11, 221 Cal. Rptr. 776, 777 (1985) (citing cases). As a result, for the reasons stated above, I believe that the trial court did not err by concluding that, given the totality of the circumstances, Trooper Smith had a "reasonable suspicion" that Defendant was driving while impaired so that his decision to stop her vehicle did not violate Defendant's rights under the state and federal constitutions. *State v. Jacobs*, 162 N.C. App. 251, 255, 590 S.E.2d 437, 441 (2004) (holding that "Officer Smith's observation of defendant's weaving within his lane for three-quarters of a mile at 1:43 a.m. in an area near bars was sufficient to establish a reasonable suspicion of impaired driving"); *State v. Watson*, 122 N.C. App. 596, 599, 472 S.E.2d 28, 30 (1996) (holding that the fact that "Trooper Deans . . . observed defendant driving on the center line and weaving back and forth within his lane for 15 seconds" "at 2:30 a.m. on a road near a nightclub" was "sufficient to form a suspicion of impaired driving"). As a result of the fact that my colleagues have reached a contrary conclusion, I respectfully dissent from the Court's decision.