STATE OF NORTH CAROLINA v. MEGAN SUE OTTO

No. 523A11

(Filed 14 June 2012)

**Search and Seizure— vehicular stop—reasonable suspicion— motion to suppress properly denied**

The trial court did not err by denying defendant's motion to suppress evidence obtained from the stop of her vehicle in a driving while impaired case. While there was insufficient evidence to support the finding of fact that the officer "knew that Rock Springs Equestrian Center serves alcohol[,]" the fact that defendant was weaving "constantly and continuously" over the course of three-quarters of a mile and was stopped around 11:00 p.m. on a Friday night was sufficient to create reasonable suspicion.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, —— N.C. App. ——, 718 S.E.2d 181 (2011), reversing a judgment entered on 30 September 2010 by Judge W. Russell Duke, Jr. in Superior Court, Pitt County. Heard in the Supreme Court on 16 April 2012.

*Roy Cooper, Attorney General, by William P. Hart, Jr., Assistant Attorney General, and William P. Hart, Sr., Senior Deputy Attorney General, for the State-appellant.*

*Robinson Law Firm, P.A., by Leslie S. Robinson, for defendant-appellee.*

*Isaac T. Avery, III for North Carolina Conference of District Attorneys; Tiffanie W. Sneed for North Carolina Association of Police Attorneys; and Edmond W. Caldwell, Jr. for North Carolina Sheriffs' Association, amici curiae.*

HUDSON, Justice.

The State seeks review of a divided Court of Appeals opinion holding that one of the trial court's findings of fact was not supported by the evidence and reversing the trial court's denial of her motion to suppress evidence obtained from the stop of her vehicle. While we agree with the Court of Appeals that one of the trial court's findings of fact was not supported by the evidence, we hold that the trial court did not err in denying defendant's motion to suppress, because there was reasonable suspicion for the traffic stop.

*Background*

On 29 February 2008, Trooper A.B. Smith was working on preventive patrol near the intersection of NC 43 and NC 264 in Pitt County. Around 11:00 p.m., as the trooper sat on a cross street, he observed a burgundy Ford Explorer drive past him on NC 43 heading south. At that point, he was about a half mile from Rock Springs Equestrian Center ("Rock Springs"), and the vehicle was coming from its direction. But, because NC 43 is a busy road into and out of Greenville, Trooper Smith did not know specifically where the vehicle was coming from. He did know that Rock Springs was hosting a Ducks Unlimited Banquet that night, and he had heard from others that Rock Springs sometimes served alcohol..

Trooper Smith happened to turn onto NC 43 behind the Ford, and he did not notice anything out of the ordinary when he pulled onto the road behind it. But while driving about a hundred feet behind the Ford, he "immediately started noticing [it] was weaving" within its own lane. The vehicle never left its lane, but was "constantly weaving from the center line to the fog line." The Ford appeared to be traveling at the posted speed limit of fifty-five miles per hour. Trooper Smith watched it weave in its own lane for about three-quarters of a mile, and then he activated his lights and stopped defendant, the driver. During the traffic stop, Trooper Smith issued defendant a citation for driving while subject to an impairing substance.

After several proceedings in both the district court and superior courts in Pitt County, on 3 December 2009, defendant filed in Superior Court a motion to suppress the evidence obtained as a result of the traffic stop. The matter was heard on 27 September 2010, and an order was entered on 13 January 2011, *nunc pro tunc* 30 September 2010, denying the motion to suppress. Defendant pleaded guilty to driving while impaired, reserving her right to appeal. She was sentenced to sixty days imprisonment, suspended, with twenty-four months of supervised probation. Defendant appealed to the Court of Appeals, which, in a divided opinion, reversed the decision of the trial court. *State v. Otto*, —— N.C. App. ——, 718 S.E.2d 181 (2011). The State appealed.

*Findings of Fact*

In its 30 September 2010 order denying defendant's motion to suppress, the trial court made, *inter alia*, the following finding of fact:

5. Trooper Smith knew that there was a Ducks Unlimited Banquet being held at the Rock Springs Equestrian Center that evening, which was approximately four-tenths to five-tenths of a mile away from where he initially observed the vehicle, and *Trooper Smith knew that Rock Springs Equestrian Center serves alcohol.*

(emphasis added). Defendant argues here, as she did at the Court of Appeals, that the trial court erred in finding that Trooper Smith "knew" that Rock Springs served alcohol. The Court of Appeals majority held that the evidence did not support the finding that the trooper "knew" Rock Springs served alcohol.

"The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Biber*, 365 N.C. 162, 167-68, 712 S.E.2d 874, 878 (2011) (citing *State v. Brooks*, 337 N.C. 132, 140-41, 446 S.E.2d 579, 585 (1994)).

At the suppression hearing, Trooper Smith testified that he had never personally been inside Rock Springs, nor had he ever witnessed anyone drinking alcohol there; however, he did state that he had "heard that they do serve alcohol." He further testified on cross-examination that he did not know what Rock Springs was like on the inside, but added that he would not classify the facility as creating the same atmosphere as the downtown area of Greenville where multiple bars are located.

We hold that this evidence does not support the trial court's finding that Trooper Smith "knew" that alcohol was served at Rock Springs. Accordingly, this finding of fact is not binding on this Court. However, we note that reliable information received or obtained by a law enforcement officer indicating that a facility serves alcohol may provide a basis for an officer's reasonable suspicion that a motorist has consumed alcohol. The better practice, which also facilitates appellate review, is for the trial court to set out the nature and extent of an officer's knowledge or belief when making findings of fact.

*Motion to Suppress*

Both the United States and North Carolina Constitutions protect against unreasonable searches and seizures. U.S. Const. amend. IV; N.C. Const. art. I, § 20. Although potentially brief and limited in scope, a traffic stop is considered a "seizure" within the meaning of these

provisions. *See Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 1396 (1979). "Traffic stops have 'been historically reviewed under the investigatory detention framework first articulated in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).'" *State v. Styles*, 362 N.C. 412, 414, 665 S.E.2d 438, 439 (2008) (citation omitted). Therefore, "reasonable suspicion is the necessary standard for traffic stops." *Id.* at 415, 665 S.E.2d at 440 (citations omitted). As articulated by the United States Supreme Court in *Terry*, the stop must be based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880 (citations omitted). "The only requirement is a minimal level of objective justification, something more than an 'unparticularized suspicion or hunch.'" *State v. Watkins*, 337 N.C. 437, 442, 446 S.E.2d 67, 70 (1994) (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585 (1989) (internal quotation marks omitted)).

Here the Court of Appeals majority determined that the traffic stop of defendant was unreasonable because it was supported solely by defendant's weaving within her own lane. *Otto*, —— N.C. App. at ——, 718 S.E.2d at 184-85. The dissenting judge would have held the stop was reasonable. *Id.* at ——, 718 S.E.2d at 186 (Ervin, J., dissenting). Looking to its own prior precedent, the Court of Appeals determined that in each case in which weaving in one's own lane was a basis for the traffic stop, reasonable suspicion was found only if the weaving was accompanied by some other factor. For example, in *State v. Aubin*, the Court of Appeals found that there was reasonable suspicion for the traffic stop when a driver was weaving within his own lane *and* traveling below the speed limit. 100 N.C. App. 628, 632, 397 S.E.2d 653, 655 (1990), *appeal dismissed and disc. rev. denied*, 328 N.C. 334, 402 S.E.2d 433, *cert. denied*, 502 U.S. 842, 112 S. Ct. 134 (1991). In *State v. Jacobs*, the Court of Appeals found reasonable suspicion for a traffic stop when the driver was weaving within his own lane *and* driving at 1:43 a.m. in the vicinity of several bars. 162 N.C. App. 251, 255, 590 S.E.2d 437, 440 (2004). On the other hand, in *State v. Fields*, the Court of Appeals determined that there was not reasonable suspicion when the driver was weaving within his own lane at 4:00 p.m. 195 N.C. App. 740, 746, 673 S.E.2d 765, 769, *disc. rev. denied*, 363 N.C. 376, 679 S.E.2d 390 (2009). Given this precedent, the majority here concluded that "[w]ithout any additional circumstances giving rise to a reasonable suspicion that criminal activity is afoot, stopping a vehicle for weaving is unreasonable." *Otto*, —— N.C. App. at ——, 718 S.E.2d at 184 (majority).

STATE v. OTTO

[366 N.C. 134 (2012)]

A court " 'must consider "the totality of the circumstances—the whole picture" in determining whether .a reasonable suspicion' exists." *Styles*, 362 N.C. at 414, 665 S.E.2d at 440 (citations omitted). The totality of the circumstances here leads us to conclude that there was reasonable suspicion for the traffic stop. Unlike the Court of Appeals cases in which weaving within a lane was found to be insufficient to support reasonable suspicion, the weaving here was constant and continual. In *Fields* the defendant weaved only three times over the course of a mile and a half. 195 N.C. App. at 741, 673 S.E.2d at 766. Similarly, in *State v. Peele*, there was only one instance of weaving. 196 N.C. App. 668, 671, 675 S.E.2d 682, 685, *disc. rev. denied*, 363 N.C. 587, 683 S.E.2d 383 (2009). In contrast, defendant here was weaving "constantly and continuously" over the course of three-quarters of a mile. In addition, defendant was stopped around 11:00 p.m. on a Friday night. These factors are sufficient to create reasonable suspicion.

Accordingly, we reverse the Court of Appeals holding that there was no reasonable suspicion for the traffic stop, and we hold that the trial court correctly denied defendant's motion to suppress.

REVERSED.

Justice NEWBY concurring.

I agree with the majority that there was reasonable, articulable suspicion to stop defendant's vehicle. In my view, however, defendant's constant and continuous weaving standing alone is sufficient to support such a conclusion.

A law enforcement officer may conduct an investigatory stop when there is "a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 675, 145 L. Ed. 2d 570, 576 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884, 20 L. Ed. 2d 889, 911 (1968)). As this Court has explained:

Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence. The standard is satisfied by some minimal level of objective justification. This Court requires that [t]he stop . . . be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training.

*State v. Styles,* 362 N.C. 412, 414, 665 S.E.2d 438, 439 (2008) (alterations in original) (internal citations and quotation marks omitted).

A criminal act need not occur before an officer may initiate a stop. In *Terry v. Ohio,* the law enforcement officer observed lawful conduct, "a series of acts, each of them perhaps innocent in itself, but which taken together warranted further investigation." *Terry,* 392 U.S. at 22, 88 S. Ct. at 1880-81, 20 L. Ed. 2d at 907. Furthermore, the reasonable suspicion standard is a "commonsense, nontechnical conception[ ] that deal[s] with ' "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act." ' " *Ornelas v. United States,* 517 U.S. 690, 695, 116 S. Ct. 1657, 1661, 134 L. Ed. 2d 911, 918 (1996) (quoting *Illinois v. Gates,* 462 U.S. 213, 231, 103 S. Ct. 2317, 2328, 76 L. Ed. 2d 527, 544 (1983) (quoting *Brinegar v. United States,* 338 U.S. 160, 175, 69 S. Ct. 1302, 1310, 93 L. Ed. 1879, 1890 (1949))).

In this case, Trooper Smith followed behind defendant "for approximately three-quarters of a mile, during which time Trooper Smith observed the vehicle weaving constantly and continuously within the width of the travel lane." That alone provides the minimal level of objective justification required for reasonable suspicion. The specific and articulable fact that defendant weaved "constantly and continuously" for three-quarters of a mile is sufficient to cause a reasonable and prudent officer to infer that defendant may be driving while impaired. *See Terry,* 392 U.S. at 22-23, 88 S. Ct. at 1880-81, 20 L. Ed. 2d at 907 (concluding that a series of lawful acts, while seemly innocent in isolation, can warrant investigation when taken together); *see also, e.g., State v. Barnard,* 362 N.C. 244, 248, 658 S.E.2d 643, 645, *cert. denied,* 555 U.S. 914, 129 S. Ct. 264, 172 L. Ed. 2d 198 (2008) (holding that a defendant's singular, but prolonged, delay in response at a green traffic signal gave rise to reasonable suspicion of criminal activity). While constant and continuous weaving within defendant's own lane could be innocent, lawful conduct, it also gives rise to reasonable suspicion that defendant is driving while impaired. Thus, there was reasonable, articulable suspicion for Trooper Smith to stop defendant's vehicle.

Although unnecessary to resolve this case, I believe the trial court had sufficient evidence to find that Trooper Smith "knew" when he stopped defendant's vehicle that Rock Springs Equestrian Center served alcohol. Under common-usage definitions of the word "know," actual certainty or first-hand knowledge is not required. *See Random House Webster's College Dictionary* 750 (1991) (defining "to know"

as "to be cognizant or aware of" or "to be acquainted or familiar with (a thing, place, person, etc.)"). Further, this is a matter on which our Court should defer to the trial court. *See, e.g., Ornelas*, 517 U.S. at 699, 116 S. Ct. at 1663, 134 L. Ed. 2d at 920-21 (pointing out that a reviewing court should give due weight to inferences drawn from facts by resident judges and local law enforcement officers since a trial judge views the facts "in light of the distinctive features and events of the community" and a law enforcement officer views the facts "through the lens of his police experience and expertise").

In any event, defendant's constant and continuous weaving standing alone is sufficient to support reasonable suspicion.

Justice JACKSON joins in this concurring opinion.