STATE v. CANTY

[224 N.C. App. 514 (2012)]

STATE OF NORTH CAROLINA
v.
NATHANIEL CANTY

No. COA12-804

Filed 18 December 2012

1. **Appeal and Error—preservation of issues—no motion to suppress filed—constitutional issue not raised at trial**

   Defendant's argument that the trial court committed plain error in a possession of a firearm by a convicted felon and carrying a concealed handgun case by admitting evidence resulting from a traffic stop was dismissed as defendant did not file a motion to suppress nor did he argue his Fourth Amendment claim to the trial court.

2. **Constitutional Law—effective assistance of counsel—search and seizure—no reasonable suspicion to initiate traffic stop**

   Defendant received ineffective assistance of counsel in a possession of a firearm by a convicted felon and carrying a concealed handgun case because his attorney did not file a motion to suppress evidence seized as a result of a traffic stop. Based on the totality of the circumstances, the officers lacked reasonable suspicion to initiate the traffic stop and a motion to suppress would likely have succeeded.

Appeal by Defendant from judgment entered 22 February 2012 by Judge Phyllis M. Gorham in Sampson County Superior Court. Heard in the Court of Appeals 14 November 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Stuart M. Saunders, for the State.*

*Reece & Reece, by Michael J. Reece, for Defendant.*

BEASLEY, Judge.

Nathaniel Canty (Defendant) appeals from his convictions of possession of a firearm by a convicted felon and carrying a concealed handgun. For the following reasons, we order a new trial.

Defendant was indicted for possession of a firearm by a convicted felon and carrying a concealed weapon on 16 May 2011. 15 April

2011, Corporals Bass and Pope of the Sampson County Sheriff's Office were stationed along I-40 in Sampson County. Corporal Bass testified that he saw a green minivan slow from approximately 73 miles per hour (mph) to 65 mph. Corporal Pope's and Corporal Bass's official reports stated that the vehicle was going 65 mph before it slowed down. The speed limit in that portion of I-40 was 70 mph. Corporal Pope's attention was drawn to the vehicle because he noted that it slowed down even though it was not exceeding the posted speed limit. Corporal Pope described the reduction in speed as "dramatic" since the front of the vehicle dipped from the reduction in speed. Both officers testified that the two occupants of the vehicle stared straight ahead and appeared nervous.

Corporal Bass pulled the patrol car from its location and began to follow the vehicle. At one point, Corporal Bass pulled the patrol car alongside of the vehicle and observed that the occupants would not make eye contact. Corporals Bass and Pope then observed that the vehicle had slowed to 59 mph. While following the vehicle, the officers testified that the vehicle crossed the solid white fog line separating the driving lane from the shoulder. Corporal Bass switched on the patrol car's lights only after the vehicle "completely crossed—went across the fog line." Based on the reduction in speed and crossing the fog line, Corporal Bass initiated a traffic stop for "unsafe movement." Corporal Pope approached the passenger side of the vehicle after the driver pulled over. Gina Canty (Ms. Canty), Defendant's ex-wife, was the driver, and Defendant was the passenger. Ms. Canty was instructed to sit in the patrol vehicle with Corporal Bass whereupon he wrote a warning for unsafe movement.

During that time, Corporal Pope talked with Defendant. Corporal Pope asked Defendant about his travel plans and his destination. Corporal Pope became suspicious based on Defendant's lack of eye contact, evasive answers, and nervous demeanor. Corporal Pope could see a strong pulse in Defendant's stomach and neck. In Corporal Pope's experience, the driver, rather than a passenger, is nervous during a traffic stop. There was no odor of marijuana or alcohol in the vehicle or on Defendant.

After writing the warning, Corporal Bass returned Ms. Canty's information and license and told her to "have a nice day." Corporal Pope then asked Ms. Canty for permission to search the vehicle. Ms. Canty consented to the search of the vehicle which revealed a revolver and a rifle in a suitcase. Corporal Bass testified that the suit-

case was behind the passenger seat.[1] Upon finding the weapons, Corporal Bass handcuffed Ms. Canty and Defendant. He read them their *Miranda* rights and questioned them about the weapons. Ms. Canty began crying and said she did not know anything about the weapons. According to Corporal Pope, Defendant agreed to speak to him about the weapons. Corporal Pope did not ask Ms. Canty about the suitcase. Defendant said that he was taking the guns back to Philadelphia for his "old lady" who needed protection and that he had more guns in Philadelphia. Corporal Bass then placed Defendant under arrest for carrying a concealed weapon and possession of a firearm by a convicted felon.

Sergeant Stroud testified regarding the operation of the camera and microphone system in the patrol car. For the patrol car used by Corporals Bass and Pope, the camera system automatically records when the lights and siren are used or if the officers manually turn on either the camera system or the microphone. The camera system automatically records 45 seconds of video, but no audio, before the system is engaged. An "M" appears on the screen indicating that the audio is muted. The recording from this traffic stop, State's Exhibit 8, was admitted into evidence and played for the jury. Sergeant Stroud explained that the "M" on the recording indicated that the microphone system was muted and that the "L" on the recording indicated that either Corporal Bass or Corporal Pope had activated the lights and siren. Defendant's counsel noted, without asking a question to Sergeant Stroud, that he never saw the vehicle touch the white fog line.

[1] Defendant argues that the trial court committed plain error in admitting evidence resulting from the traffic stop. Defendant, however, did not file a motion to suppress nor did he argue his Fourth Amendment claim to the trial court. Constitutional arguments not made at trial are generally not preserved on appeal. *State v. Cummings*, 353 N.C. 281, 292, 543 S.E.2d 849, 856 (2001). We therefore dismiss Defendant's constitutional argument.

[2] Defendant also argues that he received ineffective assistance of counsel because his attorney did not file a motion to suppress this evidence. We agree.

> It is well established that ineffective assistance of counsel claims "brought on direct review will be decided on the merits when the cold record reveals that

---

1. State's Exhibit 8, a recording of the traffic stop and search, shows Corporal Bass removing the suitcase from the driver's side of the vehicle.

> no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing."

*State v. Thompson*, 359 N.C. 77, 122-23, 604 S.E.2d 850, 881 (2004) (quoting *State v. Fair*, 354 N.C. 131, 166, 577 S.E.2d 500, 524 (2001)) (citation omitted). This Court has declined to consider a claim of ineffective assistance of counsel where it was argued that counsel was deficient in failing to file a timely written motion to suppress. *State v. Johnson*, 203 N.C. App. 718, 721-23, 693 S.E.2d 145, 146-47 (2010). In *Johnson*, no evidentiary hearing was held, and there was a clear conflict in the testimony regarding whether the crack pipe was in plain view. *Id.* at 722, 693 S.E.2d at 147. In this case, there is a very detailed transcript and a DVD of the traffic stop. The "cold record" in this case is sufficient to review Defendant's ineffective assistance of counsel claim.

> To prevail on a claim of ineffective assistance of counsel, a defendant must first show that his counsel's performance was deficient and then that counsel's deficient performance prejudiced his defense. Deficient performance may be established by showing that counsel's representation fell below an objective standard of reasonableness. Generally, to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (2006)(citations and internal quotation marks omitted). "Where the strategy of trial counsel is 'well within the range of professionally reasonable judgments,' the action of counsel is not constitutionally ineffective." *State v. Campbell*, 142 N.C. App. 145, 152, 541 S.E.2d 803, 807 (2001)(quoting *Strickland v. Washington*, 466 U.S. 668, 699, 80 L. Ed. 2d 674 (1984)). We have held that failure to file a motion to suppress is not ineffective assistance of counsel where the search or stop that led to the discovery of the evidence was lawful. *State v. Jones*, ___ N.C. App. ___, ___, 725 S.E.2d 910, 914 (2012); *State v. Brown*, ___ N.C. App. ___, ___, 713 S.E.2d 246, 249 (2011). Our review thus turns to whether the stop that led to the discovery of the challenged evidence was lawful.

A passenger has standing under the Fourth Amendment to challenge the constitutionality of a traffic stop. *Brendlin v. California*, 551 U.S. 249, 251, 168 L. Ed. 2d 132 (2007). Neither this Court nor our Supreme Court has explicitly held that a passenger has standing to contest the stop of the vehicle. The closest case is *State v. Mackey*, 209 N.C. App. 116, 124-25, 708 S.E.2d 719, 724-25 (2011), where this Court cited *Brendlin* but did not ultimately hold that a passenger has standing to contest the traffic stop. That case turned on whether the defendant had standing to contest a search of the vehicle. *Id.* at 124-25, 708 S.E.2d at 724-25. Here, Defendant challenges the *stop* that led to the search, not the search itself. In accordance with the United States Supreme Court, we hold that Defendant has standing to contest the stop of the vehicle in which he was a passenger.

In *State v. Styles*, 362 N.C. 412, 415, 665 S.E.2d 438, 440 (2008), our Supreme Court held that reasonable suspicion is the standard for all traffic stops. A traffic stop is a seizure for the purposes of the Fourth Amendment. *Id.* at 414, 665 S.E.2d at 439. "A court must consider 'the totality of the circumstances—the whole picture' in determining whether a reasonable suspicion to make an investigatory stop exists." *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994)(quoting *United States v. Cortez*, 449 U.S. 411, 417, 66 L.Ed.2d 621, 629 (1981)). "The stop must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906 (1968)). "The only requirement is a minimal level of objective justification, something more than an 'unparticularized suspicion or hunch.' " *Id.* at 442, 446 S.E.2d at 70 (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10 (1989)). Even the absence of a "verifiable traffic code violation," the driver's conduct may give rise to reasonable suspicion to initiate a traffic stop. *See State v. Jones*, 96 N.C. App. 389, 395, 386 S.E.2d 217, 221 (1989).

Our courts have decided numerous cases regarding the factual circumstances giving rise to reasonable suspicion to initiate a traffic stop. *See, e.g., State v. Otto*, ___ N.C. ___, ___, 726 S.E.2d 824, 828 (2012)("weaving 'constantly and continuously' over the course of three-quarters of a mile" around 11 p.m. is sufficient); *State v. Peele*, 196 N.C. App. 668, 674, 675 S.E.2d 682, 687 (2009)(holding one instance of weaving in one's own lane coupled with an anonymous tip does not constitute reasonable suspicion, as a single instance of weaving is "conduct falling within the broad range of what can be

described as normal driving behavior" (citations and internal quotation marks omitted)); *State v. Fields*, 195 N.C. App. 740, 746, 673 S.E.2d 765, 69 (2009)(holding that weaving in one's own lane standing alone does not provide reasonable suspicion to stop a motorist for driving under the influence of alcohol); *Jones*, 96 N.C. App. at 395, 386 S.E.2d at 221 (weaving and driving twenty mph below speed limit is enough for reasonable suspicion).

"Nervousness, like all other facts, must be taken in light of the totality of the circumstances. It is true that many people do become nervous when stopped by an officer of the law. Nevertheless, nervousness is an appropriate factor to consider when determining whether a basis for a reasonable suspicion exists." *State v. McClendon*, 350 N.C. 630, 638-639, 517 S.E.2d 128, 134 (1999). Nervousness has been considered a factor in prolonging the seizure *after* the traffic stop has been initiated, but nervousness has not been held to be a factor in *initiating* the stop. *See id.; State v. Fisher*, ___ N.C. App. ___, ___, 725 S.E.2d 40, 44-45 (2012)(noting nervousness as a proper factor after traffic stop has been made); *State v. Hodges*, 195 N.C. App. 390, 398-99, 672 S.E.2d 724, 730 (2009)(believing package in vehicle contained narcotics, giving false name of passenger, and nervousness were sufficient for reasonable suspicion to prolong stop); *State v. Myles*, 188 N.C. App. 42, 50, 654 S.E.2d 752, 758 (2008)(nervousness alone is not enough for reasonable suspicion). "Ordinary nervousness" does not amount to reasonable suspicion. *See McClendon*, 350 N.C. at 639, 517 S.E.2d at 134.

Refusal to make eye contact has also been considered in determining whether there was reasonable suspicion to prolong the traffic stop but has not been considered in the context of initiating the traffic stop. *See, e.g., McClendon*, 350 N.C. at 637, 517 S.E.2d at 133; *State v. Euceda-Valle*, 182 N.C. App. 268, 274-75, 641 S.E.2d 858, 863 (2007).

Here, the State argues that Ms. Canty's alleged crossing of the fog line, Ms. Canty's and Defendant's alleged nervousness and failure to make eye contact with the officers as they drove by and drove alongside the patrol car, and the vehicle's slowed speed for reasonable suspicion were legitimate grounds for the traffic stop. Based on the totality of the circumstances, these factors fall short of reasonable suspicion.

First, the State's evidence shows that there was no traffic violation. State's Exhibit 8 shows that the vehicle did not cross the fog line

in the forty-five second interval before Corporal Bass engaged the lights and siren. Corporal Bass testified that he only turned on the blue lights and siren *after* he saw the vehicle cross the fog line.

Second, even in the absence of a "verifiable traffic code violation," the officer's beliefs about Defendant and Ms. Canty's conduct amounts to nothing more than an "unparticularized suspicion or hunch." Nervousness, slowing down, and not making eye contact is nothing unusual when passing law enforcement stationed on the side of the highway. We find it hard to believe that these officers could tell Ms. Canty and Defendant were "nervous" as they passed by the officers on the highway and as the officers momentarily rode alongside them. A vehicle's slowed speed has been a factor in initiating a traffic stop, but the weight of this factor is minimal since the officers' reports state that the vehicle was going 65 mph and slowed to 59 mph, which is hardly significant in comparison to *Jones* where we held that driving twenty mph below the speed limit in addition to weaving amounted to reasonable suspicion. *Jones*, 96 N.C. App. at 395, 386 S.E.2d at 221. Slowed speed also tends to be a factor in reasonable suspicion for impaired driving. *See State v. Aubin*, 100 N.C. App. 628, 632, 397 S.E.2d 653, 655 (1990); *Jones*, 96 N.C. App. at 395, 386 S.E.2d at 221. Impaired driving, however, was not the offense for which the officers testified that they pulled over Ms. Canty. Even if the nose of the car dipping from the sudden reduction in speed demonstrates a significant change in speed, it is the only factor on which this stop is premised. The reduction in speed standing alone could be explained a number of different ways, including normal apprehension many people feel when approaching a law enforcement officer. Nervousness, failure to make eye contact with law enforcement, and a relatively small reduction in speed is "conduct falling within the broad range of what can be described as normal driving behavior." *Peele*, 196 N.C. App. at 674, 675 S.E.2d 687 (citations and internal quotation marks omitted). Based on the totality of the circumstances, these officers lacked reasonable suspicion to initiate the traffic stop that resulted in the search and seizure of the weapons in this case.

Since we have found that the search of the vehicle was illegal, a motion to suppress would likely succeed, distinguishing this case from *Jones*, ___ N.C. App. at ___, 725 S.E.2d at 914, and *Brown*, ___ N.C. App. at ___, 713 S.E.2d at 249. We cannot discern a strategic advantage by *not* filing a motion to suppress the incriminating evidence. Defense counsel apparently realized that the search was illegal but chose not to file a motion to suppress, saying, "First of all,

I never saw the vehicle touch the line but I'm going to move on." Without the traffic stop, there would have been no search. Without the search, no weapons would have been found. Without the weapons, Defendant could not have been convicted of carrying a concealed weapon or possession of a firearm by a convicted felon. We hold that defense counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that the outcome would have been different had defense counsel filed a motion to suppress. As such, Defendant has demonstrated that he received ineffective assistance of counsel and is entitled to a new trial.

For the above reasons, we order a new trial.

New Trial.

Judges ELMORE and STROUD concur.

