ELMORE, Judge.
 

 *297
 
 Police ordered Juan Antonia Miller (defendant) out of a vehicle during a traffic stop and searched him, finding a small bag of cocaine in his pocket. The cocaine, defendant argues, was the fruit of an unconstitutional seizure and the trial court committed plain error by failing to exclude it from evidence at trial. Upon plain error review, we hold that (1) the officer unlawfully extended the traffic stop; (2) assuming the seizure was lawful, defendant's consent was not valid; and (3) admitting the evidence at trial prejudiced defendant and seriously affects the integrity and public reputation of judicial proceedings. Defendant is entitled to a new trial.
 

 *298
 

 I. Background
 

 On the evening of 18 March 2014, Officer H.B. Harris was patrolling "problem areas" with the Vice and Tactical Narcotics Team of the Greensboro Police Department. He observed a vehicle turn left from Darden Road onto Holden Road and position itself in front of his unmarked patrol car. Officer Harris followed the car to Interstate 85 and decided to run its license plate through the DMV database. The search indicated that a "hold" had been placed on the tag because the owner had not paid the insurance premiums.
 

 Officer Harris, who was wearing a body-mounted camera, pulled the vehicle over and approached the passenger-side window. The owner of the vehicle, Derick Sutton, was in the passenger's seat; defendant was in the driver's seat. Officer Harris asked defendant for his driver's license before informing the two occupants that he had stopped them for speeding and a potential tag violation. When he learned that Sutton was the registered owner of the vehicle, Officer Harris inquired about the status of his insurance. Sutton handed Officer Harris an insurance card to show that he had recently purchased car insurance. At Officer Harris's request, Sutton also produced his driver's license and told the officer that they were "coming from a friend's house on Randleman Road." Officer Harris testified that this "piqued his interest" because he "knew ... they did not get on the interstate from Randleman Road, and Holden Road is a little distance away from Randleman Road." He then ordered Sutton to step out of the vehicle.
 

 As Sutton complied, Officer Harris asked Sutton if he had any weapons or drugs on him. Sutton said he did not, and was then motioned to stand with another officer who had arrived on the scene. Officer Harris proceeded toward the driver's side and asked defendant to step out of the vehicle. As defendant complied, Officer Harris asked defendant if he had any weapons or drugs on him. Defendant also said he did not. According to Officer Harris's testimony, he then asked defendant, "Do you mind if I check?" to which defendant responded, "No," and placed his hands on the trunk of the vehicle. Officer Harris searched defendant and found
 
 *376
 
 a plastic corner-bag of cocaine in his left pocket.
 

 The footage from the body camera was published to the jury at trial and, at the jury's request, once more during deliberations. Defendant was found guilty of possession of cocaine and sentenced to an active term of six to seventeen months of imprisonment. He gave notice of appeal in open court.
 

 *299
 

 II. Discussion
 

 Defendant argues on appeal that Officer Harris unlawfully extended the traffic stop and evidence of the cocaine should have been excluded as the fruit of an unconstitutional seizure. Defendant filed no motion to suppress and raised no objection to the evidence at trial but contends on appeal that the admission of the cocaine and Officer Harris's testimony thereof amounted to plain error. Alternatively, defendant argues that he received ineffective assistance of counsel based on his counsel's failure to file a motion to suppress.
 

 The State argues in response that plain error review is not appropriate because the issue is constitutional, rather than evidentiary, and defendant waived any challenge to the lawfulness of the seizure.
 
 See
 

 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 516,
 
 723 S.E.2d 326
 
 , 333 (2012) ("[P]lain error review in North Carolina is normally limited to instructional and evidentiary error." (citations omitted));
 
 see also
 

 State v. Canty
 
 ,
 
 224 N.C.App. 514
 
 , 516,
 
 736 S.E.2d 532
 
 , 535 (2012) ("Constitutional arguments not made at trial are generally not preserved on appeal." (citing
 
 State v. Cummings
 
 ,
 
 353 N.C. 281
 
 , 292,
 
 543 S.E.2d 849
 
 , 856 (2001) )),
 
 writ of supersedeas and disc. review denied
 
 ,
 
 366 N.C. 578
 
 ,
 
 739 S.E.2d 850
 
 (2013). Had defendant raised the issue below, the State suggests, then the trial court would have scrutinized the facts and circumstances surrounding the traffic stop in greater detail. But because defendant remained silent at trial, the record is not sufficiently developed to reach a conclusion on the lawfulness of the seizure.
 

 While we recognize the merit to the State's position,
 
 [1]
 
 this Court has applied plain error review to similar evidentiary challenges involving unpreserved constitutional claims.
 
 See, e.g.
 
 ,
 
 State v. Jones
 
 ,
 
 216 N.C.App. 225
 
 , 229-30,
 
 715 S.E.2d 896
 
 , 900-01 (2011),
 
 appeal dismissed and disc. review denied
 
 ,
 
 365 N.C. 559
 
 ,
 
 723 S.E.2d 767
 
 (2012);
 
 State v. Mohamed
 
 ,
 
 205 N.C.App. 470
 
 , 474-76,
 
 696 S.E.2d 724
 
 , 729-30 (2010). In cases where we have declined to do so, our Supreme Court has remanded for plain error review.
 
 See, e.g.
 
 ,
 
 State v. Bean
 
 ,
 
 227 N.C.App. 335
 
 , 336-37,
 
 742 S.E.2d 600
 
 , 602,
 
 disc. review denied
 
 ,
 
 367 N.C. 211
 
 ,
 
 747 S.E.2d 542
 
 (2013). Accordingly, we must examine the evidence that was before the trial court "to determine if it committed plain error by allowing the
 
 *300
 
 admission of the challenged [evidence]."
 
 Mohamed
 
 ,
 
 205 N.C.App. at 476
 
 ,
 
 696 S.E.2d at 730
 
 .
 

 Plain error arises when the error is " 'so basic, so prejudicial, so lacking in its elements that justice cannot have been done.' "
 
 State v. Odom
 
 ,
 
 307 N.C. 655
 
 , 660,
 
 300 S.E.2d 375
 
 , 378 (1983) (quoting
 
 United States v. McCaskill
 
 ,
 
 676 F.2d 995
 
 , 1002 (4th Cir. 1982),
 
 cert. denied
 
 ,
 
 459 U.S. 1018
 
 ,
 
 103 S.Ct. 381
 
 ,
 
 74 L.Ed.2d 513
 
 (1982) ).
 

 For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.
 

 Lawrence
 
 , 365 N.C. at 518, 723 S.E.2d at 334 (alterations, citations, and internal quotation marks omitted).
 

 The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend IV. "A traffic stop is a seizure 'even though the purpose of the
 
 *377
 
 stop is limited and the resulting detention quite brief.' "
 
 State v. Styles
 
 ,
 
 362 N.C. 412
 
 , 414,
 
 665 S.E.2d 438
 
 , 439 (2008) (quoting
 
 Delaware v. Prouse
 
 ,
 
 440 U.S. 648
 
 , 653,
 
 99 S.Ct. 1391
 
 ,
 
 59 L.Ed.2d 660
 
 (1979) ). As such, "[t]he scope of the detention must be carefully tailored to its underlying justification."
 
 Florida v. Royer
 
 ,
 
 460 U.S. 491
 
 , 500,
 
 103 S.Ct. 1319
 
 ,
 
 75 L.Ed.2d 229
 
 (1983) ;
 
 see also
 

 Rodriguez v. United States
 
 , --- U.S. ----,
 
 135 S.Ct. 1609
 
 , 1614,
 
 191 L.Ed.2d 492
 
 (2015) ("A relatively brief encounter, a routine traffic stop is more analogous to a so-called
 
 Terry
 
 -stop than to a formal arrest." (alterations, citations, and internal quotation marks omitted)).
 

 The Supreme Court explained in
 
 Rodriguez
 
 that "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'-to address the traffic violation that warranted the stop and attend to related safety concerns."
 
 Rodriguez
 
 ,
 
 135 S.Ct. at 1614
 
 (citations omitted). The stop may last no longer than is necessary to address the infraction.
 

 Id.
 

 "Authority for the seizure thus ends when tasks tied to the traffic infraction are-or reasonably should have been-completed."
 

 Id.
 

 (citation omitted).
 

 An officer's mission may include " 'ordinary inquiries incident to the traffic stop.' "
 

 Id.
 

 at 1615
 
 (quoting
 
 *301
 

 Illinois v. Caballes
 
 ,
 
 543 U.S. 405
 
 , 408,
 
 125 S.Ct. 834
 
 ,
 
 160 L.Ed.2d 842
 
 (2005) ). The Supreme Court has explicitly approved certain incidental inquiries, including "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance."
 

 Id.
 

 (citations omitted). It has also held that an officer may order occupants out of a vehicle during a lawful traffic stop to complete the mission safely.
 
 See
 
 id.
 

 ("[T]he government's 'legitimate and weighty' interest in officer safety outweighs the '
 
 de minimis
 
 ' additional intrusion of requiring a driver, already lawfully stopped, to exit the vehicle." (quoting
 
 Pennsylvania v. Mimms
 
 ,
 
 434 U.S. 106
 
 , 110-111,
 
 98 S.Ct. 330
 
 ,
 
 54 L.Ed.2d 331
 
 (1977) ) (citing
 
 Maryland v. Wilson
 
 ,
 
 519 U.S. 408
 
 , 413-15,
 
 117 S.Ct. 882
 
 ,
 
 137 L.Ed.2d 41
 
 (1997) )).
 
 But see
 

 State v. Reed
 
 , --- N.C. App. ----, ----, --- S.E.2d ----, ----,
 
 2016 WL 5030389
 
 (Sept. 20, 2016) (No. COA1633) ("[A]n officer may offend the Fourth Amendment if he unlawfully extends a traffic stop by asking a driver to step out of a vehicle." (citation omitted)),
 
 temporary stay allowed
 
 , --- N.C. ----, --- S.E.2d ----,
 
 2016 WL 5811350
 
 (Oct. 5, 2016) (No. 365A16-1 ). Measures designed to "detect evidence of ordinary criminal wrongdoing," on the other hand, "lack[ ] the same close connection to roadway safety as the ordinary inquiries" and are not part of the officer's mission.
 
 Rodriguez
 
 ,
 
 135 S.Ct. at 1615-16
 
 .
 

 Before
 
 Rodriguez
 
 was decided, we held in
 
 State v. Jackson
 
 ,
 
 199 N.C.App. 236
 
 ,
 
 681 S.E.2d 492
 
 (2009), that an officer's questions about the presence of weapons and drugs unlawfully extended a traffic stop which should have otherwise been completed.
 
 Id.
 
 at 242-44,
 
 681 S.E.2d at 496-98
 
 . The officer had stopped the vehicle on suspicion that Roth, the registered owner, was driving without a license.
 
 Id.
 
 at 238,
 
 681 S.E.2d at 494
 
 . Roth, who had recently moved back to North Carolina, produced a valid Kentucky driver's license.
 

 Id.
 

 The officer later acknowledged that the stop "was pretty much over" after she checked his license, but she began a separate investigation:
 

 [I asked Roth] if there was anything illegal in the vehicle. He advised no. I asked if there was, specific, like, weapons, marijuana, any kind of drugs. He said no. I asked him if I could search the vehicle. [He] replied-first he said "the vehicle?" as in a question. And then he replied, "You can search the vehicle if you want to."
 

 Id.
 
 at 238-39,
 
 681 S.E.2d at 494
 
 . The interrogation, we concluded, "was indeed an extension of the detention beyond the scope of the original traffic stop" because the officer's questions were "not necessary to confirm or dispel [her] suspicion that Roth was operating without a valid driver's license and it occurred after [the officer's] suspicion ... had already been dispelled."
 
 Id.
 
 at 242,
 
 681 S.E.2d at 496-97
 
 .
 

 *302
 
 We recognize that, in contrast to
 
 Jackson
 
 , Officer Harris may not have completed the two-part mission of the stop. But an officer cannot justify an extended detention on his or her own artful inaction. As
 
 *378
 

 Rodriguez
 
 makes clear, it is not whether the challenged police conduct "occurs before or after the officer issues a ticket" but whether it "prolongs-
 
 i.e.
 
 , adds time to-the stop."
 
 Rodriguez
 
 ,
 
 135 S.Ct. at 1616
 
 (citation and internal quotation marks omitted). The more appropriate question, therefore, is whether Officer Harris "diligently pursued a means of investigation" designed to address the reasons for the stop.
 
 See
 

 United States v. Sharpe
 
 ,
 
 470 U.S. 675
 
 , 686,
 
 105 S.Ct. 1568
 
 ,
 
 84 L.Ed.2d 605
 
 (1985) (citations omitted).
 

 After reviewing the footage of the traffic stop, it is wholly evident that Officer Harris was more concerned with discovering contraband than issuing traffic tickets. He readily accepted Sutton's insurance card as proof that Sutton had been paying the premiums, and he even testified at trial that he had no way to determine if the insurance card was invalid. Thereafter, Officer Harris took no action to issue a citation, to address the speeding violation, or to otherwise indicate a diligent investigation into the reasons for the traffic stop. Instead, he ordered Sutton and defendant out of the vehicle and began an investigation into the presence of weapons and drugs.
 

 Such a detour, albeit brief, can hardly be seen as a safety precaution to facilitate the mission of the stop as much as "a measure aimed at detecting evidence of ordinary criminal wrongdoing."
 
 See
 

 Rodriguez
 
 ,
 
 135 S.Ct. at 1615
 
 (citations and internal quotation marks omitted). And absent "the same close connection to roadway safety as ordinary inquiries," the exit order and extraneous questioning cannot be justified as a
 
 de minimis
 
 intrusion outweighed by the government's interest in officer safety.
 

 Id.
 

 at 1615-16 ;
 
 see also
 

 State v. Bullock
 
 , --- N.C. App. ----, ----,
 
 785 S.E.2d 746
 
 , 752 (2016) ("[U]nder
 
 Rodriguez
 
 , even a
 
 de minimis
 
 extension is too long if it prolongs the stop beyond the time necessary to complete the mission." (citation omitted)),
 
 writ allowed
 
 , --- N.C. ----,
 
 786 S.E.2d 927
 
 (2016). Rather, there must have been some alternative basis to prolong the stop.
 
 Rodriguez
 
 ,
 
 135 S.Ct. at 1615
 
 .
 

 To extend a lawful traffic stop beyond its original purpose, "there must be grounds which provide the detaining officer with additional reasonable and articulable suspicion or the encounter must have become consensual."
 
 Jackson
 
 ,
 
 199 N.C.App. at 241-42
 
 ,
 
 681 S.E.2d at
 
 496 (citing
 
 State v. Myles
 
 ,
 
 188 N.C.App. 42
 
 , 45,
 
 654 S.E.2d 752
 
 , 755,
 
 aff'd per curiam
 
 ,
 
 362 N.C. 344
 
 ,
 
 661 S.E.2d 732
 
 (2008) );
 
 see
 

 Rodriguez
 
 ,
 
 135 S.Ct. at 1615
 
 ("An officer ... may conduct certain unrelated checks during
 
 *303
 
 an otherwise lawful traffic stop. But ... he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual.");
 
 State v. Williams
 
 ,
 
 366 N.C. 110
 
 , 116,
 
 726 S.E.2d 161
 
 , 166 (2012) ("[T]o detain a driver beyond the scope of the traffic stop, the officer must have the driver's consent or reasonable articulable suspicion that illegal activity is afoot." (citations omitted));
 
 see also
 

 State v. Parker
 
 ,
 
 183 N.C.App. 1
 
 , 9,
 
 644 S.E.2d 235
 
 , 242 (2007) ("Without additional reasonable articulable suspicion of additional criminal activity, the officer's request for consent [to search] exceeds the scope of the traffic stop and the prolonged detention violates the Fourth Amendment." (citations omitted)).
 

 The State does not allege-nor does the evidence show-that the encounter had become consensual. A consensual encounter is one in which "a reasonable person would feel free to disregard the police and go about his business."
 
 Florida v. Bostick
 
 ,
 
 501 U.S. 429
 
 , 434,
 
 111 S.Ct. 2382
 
 ,
 
 115 L.Ed.2d 389
 
 (1991) (citations omitted). Minimally, defendant could not reasonably have felt that he was free to leave while Officer Harris still had his driver's license.
 
 See
 

 Jackson
 
 ,
 
 199 N.C.App. at 243
 
 ,
 
 681 S.E.2d at 497
 
 ("Generally, an initial traffic stop concludes and the encounter becomes consensual only after an officer returns the detainee's driver's license and registration." (citations omitted)).
 

 The State argues instead that Officer Harris had reasonable suspicion to extend the stop because he observed the vehicle while patrolling "problem areas," defendant gave "incongruent" answers to his coming and going questions, defendant "raised his hands in the air" as he stepped out of the vehicle, and defendant was driving the vehicle instead of Sutton, the registered owner. "An officer has
 
 *379
 
 reasonable suspicion if a 'reasonable, cautious officer, guided by his experience and training,' would believe that criminal activity is afoot 'based on specific and articulable facts, as well as the rational inferences from those facts.' "
 
 Williams
 
 , 366 N.C. at 116,
 
 726 S.E.2d at 167
 
 (citations omitted). In determining whether reasonable suspicion exists, "the totality of the circumstances-the whole picture-must be taken into account."
 
 United States v. Cortez
 
 ,
 
 449 U.S. 411
 
 , 417,
 
 101 S.Ct. 690
 
 ,
 
 66 L.Ed.2d 621
 
 (1981). "While something more than a mere hunch is required, the reasonable suspicion standard demands less than probable cause and considerably less than preponderance of the evidence."
 
 Williams
 
 , 366 N.C. at 117,
 
 726 S.E.2d at 167
 
 (citations omitted).
 

 Officer Harris's observation of the vehicle in a high-crime area is not sufficient, either by itself or in conjunction with the other "factors" identified by the State, to establish reasonable suspicion of criminal activity.
 
 See
 

 Brown v. Texas
 
 ,
 
 443 U.S. 47
 
 , 52,
 
 99 S.Ct. 2637
 
 ,
 
 61 L.Ed.2d 357
 
 (1979) (holding that presence
 
 *304
 
 in a high-crime area, "standing alone, is not a basis for concluding that [a defendant] was engaged in criminal conduct"). There was nothing "incongruent" about defendant's travel plans. Officer Harris found it suspicious that Sutton said they were "coming from a friend's house on Randleman Road" not because they were traveling in the opposite direction, but because Harris saw them merge onto the interstate from Holden Road-"which is a
 
 little distance away
 
 from Randleman Road." (Emphasis added.) As Officer Harris then approached the driver's side of the vehicle, defendant kept his hands in plain view above the steering wheel-a far cry from a signal of surrender and a gesture we cannot construe as "an indicator of culpability." And while the State notes "it is not clear why the defendant was driving the vehicle when it was registered to the passenger," it fails to elaborate on how this is more indicative of criminal activity than innocent travel.
 

 Even assuming that the traffic stop was lawful up to the point when defendant consented to the search, as told by Officer Harris, we cannot conclude that his consent was valid. Officer Harris testified that defendant verbally agreed to the search and placed his hands on the trunk of the vehicle, but the footage from the body camera reveals a different version of the interaction. Officer Harris had defendant turned around, facing the rear of the vehicle with his arms and legs spread
 
 before he asked for defendant's consent
 
 . This was textbook coercion. If defendant did respond to Officer Harris's request-and it is still not apparent that he did-it was certainly not a free and intelligent waiver of his constitutional rights.
 
 See
 

 State v. Vestal
 
 ,
 
 278 N.C. 561
 
 , 578-79,
 
 180 S.E.2d 755
 
 , 767 (1971).
 

 III. Conclusion
 

 The egregiousness of the violations in this case, apparent from the body camera footage, demands the conclusion that a fundamental error occurred at trial which both prejudiced defendant and seriously affects the integrity and public reputation of judicial proceedings. Because defendant is entitled to a new trial, we need not address his claim for ineffective assistance of counsel.
 

 NEW TRIAL.
 

 Judges STEPHENS and ZACHARY concurs.
 

 [1]
 

 We also note that footage from an officer's body camera may not reveal the totality of the circumstances giving rise to a traffic stop. In some cases, however, it may be the best evidence of the interaction between an officer and a defendant. Because the footage was included in the record on appeal, it helps to alleviate concerns of reviewing an undeveloped record.