DAVIS, Judge.
 

 *644
 
 In this appeal, we consider whether (1) a police officer's observation of a single instance of a vehicle crossing the double yellow centerline in violation of North Carolina's motor vehicle laws constitutes reasonable suspicion to conduct a traffic stop; and (2) a trial court may properly consider at a suppression hearing testimony from an officer about a vehicle stop that includes material information not contained in the officer's contemporaneous reports. Ralph Jones, Jr. ("Defendant") appeals from his conviction for driving while impaired. After a thorough review of the record and applicable law, we affirm the order of the trial court denying his motion to suppress.
 

 Factual and Procedural Background
 

 On 8 December 2013, Trooper Matthew Myers of the North Carolina State Highway Patrol was traveling southbound on N.C. Highway 32 in Beaufort County. At approximately 7:00 p.m., he was notified by dispatch that a caller had reported that a black Chevrolet truck was traveling northbound on Highway 32 at "a careless/reckless high speed ...."
 

 As Trooper Myers approached a curve in the road, he observed two vehicles less than a quarter of a mile ahead of his patrol car traveling in the northbound lane. A double yellow line divided the lanes of travel. One of the two vehicles was a black Chevrolet truck, and Trooper Myers observed that the truck was "slightly left of center in a curve." He was able to "tell the [head]lights were in [his] traveling lane instead of the northbound lane ...."
 

 *645
 
 After the truck passed Trooper Myers' patrol vehicle, it "pulled to the right shoulder of the road ...." He activated his blue lights, made a U-turn, and pulled behind the truck. He observed Defendant sitting in the driver's seat as he approached the vehicle. Based on his conversation with Defendant, Trooper Myers believed he was impaired.
 

 Defendant was arrested and charged with driving while impaired. That same evening, Trooper Myers made handwritten notes in an Affidavit and Revocation Report (the "Revocation Report") and in a Driving While Impaired Report Form (the "DWIR Form"). He later testified that for "most of [his] DWI cases" he was unable to "put a lot of information on the DWIR form" due to space constraints and his "sloppy" handwriting. For this reason, he would type his full observations into a Microsoft Word document so that it would be "easier to read ...."
 

 On 9 December 2013, he followed this practice by typing notes concerning the prior evening's traffic stop into a Microsoft Word document. These notes contained greater detail about the incident than the Revocation Report or the DWIR form.
 

 On 26 August 2014, Defendant filed a motion to suppress in which he sought to exclude the evidence obtained as a result of the traffic stop based on his assertion that the stop itself was unlawful. A suppression hearing was held before the Honorable Wayland J. Sermons, Jr., in Beaufort County Superior Court on 15 September 2016. Trooper Myers
 
 *670
 
 was the only witness who testified at the hearing.
 

 The trial court entered an order on 11 October 2016 denying the motion to suppress. On 7 February 2017, Defendant pled guilty to driving while impaired but expressly reserved his right to appeal the denial of his motion to suppress. That same day, the trial court sentenced him to 30 days imprisonment but suspended the sentence and placed him on unsupervised probation for 24 months. Defendant gave oral notice of appeal in open court.
 

 Analysis
 

 On appeal, Defendant's sole argument is that the trial court erred by denying his motion to suppress. Specifically, he contends that (1) the trial court's findings of fact in its 11 October 2016 order were unsupported by competent evidence; and (2) the trial court erred as a matter of law in concluding that Trooper Myers possessed reasonable suspicion to stop his vehicle.
 

 "This Court's review of an appeal from the denial of a defendant's motion to suppress is limited to determining whether competent
 
 *646
 
 evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law."
 
 State v. Granger
 
 ,
 
 235 N.C. App. 157
 
 , 161,
 
 761 S.E.2d 923
 
 , 926 (2014) (citation and quotation marks omitted). It is well established that "the trial court resolves conflicts in the evidence and weighs the credibility of evidence and witnesses."
 
 State v. Saldierna
 
 , --- N.C. App. ----, ----,
 
 803 S.E.2d 33
 
 , 42,
 
 disc. review allowed
 
 ,
 
 370 N.C. 280
 
 ,
 
 805 S.E.2d 482
 
 (2017).
 

 Investigatory traffic stops "must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training."
 
 State v. Watkins
 
 ,
 
 337 N.C. 437
 
 , 441,
 
 446 S.E.2d 67
 
 , 70 (1994). Our Supreme Court has held that "[a] court must consider the totality of the circumstances-the whole picture in determining whether a reasonable suspicion exists" to justify an officer's investigatory traffic stop.
 
 State v. Otto
 
 ,
 
 366 N.C. 134
 
 , 138,
 
 726 S.E.2d 824
 
 , 828 (2012) (internal citation and quotation marks omitted).
 

 In its 11 October 2016 order, the trial court made the following pertinent findings of fact:
 

 1. On December 13, 2013, Trooper Matthew Myers of the North Carolina State Highway Patrol arrested defendant and charged him with impaired driving.
 

 2. On August 26, 2014, defendant filed a
 
 Motion To Suppress Evidence
 
 that challenged whether there was reasonable suspicion for Trooper Myers to make a seizure of Defendant.
 

 3. On December 13, 2013 at approximately 7:02 o'clock pm, Trooper Myers was employed with the North Carolina State Highway Patrol, on duty, and traveling south on NC Highway 32 towards the city of Washington.
 

 4. That prior to 7:02 o'clock pm Trooper Myers overheard a dispatch from communications concerning a black Chevy truck travelling north on NC Highway 32 driving in a careless and reckless manner at a high speed just past the "Meat Farm".
 

 5. Trooper Myers was just north of the "Meat Farm" and continued south looking for the black Chevy Truck on NC Highway 32.
 

 *647
 
 6. As Trooper Myers was travelling south on NC Highway 32 he observed two vehicles approaching him with some distance between the two vehicles.
 

 7. That when Trooper Myers initially observed the second vehicle said vehicle was coming out of a slight curve as it approached him and he could see that it was slightly left of the centerline because he could see one of its headlights in his lane of travel.
 

 8. The second vehicle moved back into its lane of travel and as Trooper Myers passed the vehicle he noticed that it was a black Chevy truck and was the vehicle about which he had received the dispatch to be on the lookout for.
 

 9. After Trooper Myers passed the black Chevy truck he observed the truck immediately
 
 *671
 
 pull over to the right side of the road.
 

 10. Trooper Myers immediately turned his vehicle around and pulled in behind the black Chevy truck which was pulled off on the right hand shoulder of the road to check on the driver and activated his blue lights and exited his patrol vehicle.
 

 11. During the hearing on Defendant's motion the Defendant admitted into evidence Defendant's Motion exhibit # 1 which was a copy of form 3907, Affidavit and Revocation Report from this file number and Defendant's Motion exhibit # 2 which is a copy of Trooper Myers' Driving While Impaired Report (DWIR) form from this case.
 

 12. That the Court only reviewed said Exhibits to the point that Trooper Myers stopped his vehicle to check on the driver and did not consider any other portions of said Exhibits.
 

 13. Trooper Myers on cross-examination admitted that neither the Affidavit and Revocation Report nor the DWIR form contained any mention that he observed the black Chevy truck left of center.
 

 14. Trooper Myers testified that he had notes on his computer, which notes he made the day after the stop after
 
 *648
 
 he had watched the video from his on board camera of the incident, and in such notes he recorded that he had observed the truck left of center to the point he could observer [sic] one of the truck's headlights in his lane of travel.
 

 Based on these findings of fact, the trial court then made the following relevant conclusions of law:
 

 2. That a seizure occurred when Trooper Myers pulled in behind Defendant and his vehicle and activated his blue lights.
 

 3. Considering the totality of the circumstances, Trooper Myers did have sufficient reasonable suspicion to make a seizure of Defendant and his vehicle.
 

 I. Conflicts in Evidence
 

 Defendant's first argument is that the trial court erred in relying upon Trooper Myers' testimony at the motion to suppress hearing that he actually saw Defendant's vehicle cross the centerline given the absence of that information in the Revocation Report or DWIR Form. Defendant argues that the trial court's findings are contradicted by the Revocation Report and DWIR Form, which did not contain these details.
 

 During the motion to suppress hearing, Trooper Myers testified from his typed Microsoft Word notes, which he read into the record as follows:
 

 [TROOPER MYERS:] ... Received the call from dispatch of a ... black Chevy truck northbound on NC 32 just past the meat farm. I was southbound, headed that way on my way to the office when the call came out. Truck was northbound exiting the curve when I first made contact,
 
 could tell the truck was in the southbound lane coming out of the curve.
 
 As it got closer, I saw it was a black Chevy truck matching the description of BOLO that was given out. With that, left of center and the vehicle pulling off onto the shoulder right past me, I turned around on the vehicle. As soon as the truck passed me, I could see the brake lights, and it pulled over to the right shoulder of the road.
 

 (Emphasis added.)
 

 Defendant contends that the trial court erred in giving weight to Trooper Myers' testimony at the hearing because it contradicted the
 
 *649
 
 information contained in the Revocation Report and DWIR Form. In support of this argument, he cites
 
 State v. Canty
 
 ,
 
 224 N.C. App. 514
 
 ,
 
 736 S.E.2d 532
 
 (2012),
 
 disc. review denied
 
 ,
 
 366 N.C. 578
 
 ,
 
 739 S.E.2d 850
 
 (2013).
 

 In
 
 Canty
 
 , an officer conducted a traffic stop of the defendant's vehicle based on his belief that the vehicle had crossed the fog line separating his lane of travel from the shoulder of the road. The State presented video surveillance from the patrol vehicle camera, which demonstrated that "there was no traffic violation" and that "the vehicle did not cross the fog line in the forty-five second
 
 *672
 
 interval before [the officer] engaged the lights and siren."
 
 Id.
 
 at 519-20,
 
 736 S.E.2d at 537
 
 . We concluded-based on the video-that the officer lacked reasonable suspicion to conduct the traffic stop.
 
 Id.
 
 at 520,
 
 736 S.E.2d at 537
 
 .
 

 Here, conversely, Trooper Myers' testimony at the suppression hearing supplemented rather than contradicted the information in the Revocation Report and DWIR Form. He explained that although his contemporaneous notes in those documents on the evening of the traffic stop were not detailed, the notes he made the following day contained additional information-including the fact that he had observed Defendant's truck cross the double yellow centerline.
 

 The trial court possessed the authority to evaluate the credibility of Trooper Myers' testimony as to what he observed before he pulled over Defendant's vehicle and the circumstances under which he made the Microsoft Word notes the following day. Thus, the trial court properly considered Trooper Myers' testimony at the suppression hearing, and the findings of fact in its order were supported by competent evidence.
 

 II. Existence of Reasonable Suspicion
 

 Having determined that the challenged findings were supported by competent evidence, we turn to the question of whether the findings supported the trial court's conclusion of law that Trooper Myers had reasonable suspicion to stop Defendant's vehicle. Defendant argues that reasonable suspicion was absent given the failure of Trooper Myers to corroborate the anonymous tip received by dispatch, which by itself was insufficient to provide reasonable suspicion for the stop of Defendant's vehicle.
 
 See
 

 State v. Hughes
 
 ,
 
 353 N.C. 200
 
 , 207,
 
 539 S.E.2d 625
 
 , 630 (2000) (anonymous tip can establish reasonable suspicion only if it contains sufficient indicia of reliability but "a tip that is somewhat lacking in reliability may still provide a basis for reasonable suspicion if it is buttressed by sufficient police corroboration" (citations omitted) ).
 

 *650
 
 We reject Defendant's argument because it ignores the fact that Trooper Myers' direct observations provided reasonable suspicion for the vehicle stop. Under North Carolina law, Defendant's act of crossing the double yellow centerline clearly constituted a traffic violation.
 
 N.C. Gen. Stat. § 20-150
 
 (d) (2017) ("The driver of a vehicle shall not drive to the left side of the centerline of a highway upon the crest of a grade or upon a curve in the highway where such centerline has been placed upon such highway by the Department of Transportation, and is visible.").
 

 This Court has made clear that an officer's observation of such a traffic violation is sufficient to constitute reasonable suspicion for a traffic stop.
 
 See, e.g.
 
 ,
 
 State v. Osterhoudt
 
 ,
 
 222 N.C. App. 620
 
 , 632,
 
 731 S.E.2d 454
 
 , 462 (2012) ("Trooper Monroe's testimony that he initiated the stop of defendant after observing defendant drive over the double yellow line is sufficient to establish a violation of: (1)
 
 N.C. Gen. Stat. § 20-146
 
 (d)(3-4) ...;
 
 N.C. Gen. Stat. § 20-146
 
 (d)(1) ...; and
 
 N.C. Gen. Stat. § 20-153
 
 ....");
 
 State v. Hudson
 
 ,
 
 206 N.C. App. 482
 
 , 486,
 
 696 S.E.2d 577
 
 , 581 (officer's "observation of Defendant twice crossing the center and fog lines provided [officer] with probable cause to stop Defendant's truck"),
 
 disc. review denied
 
 ,
 
 364 N.C. 619
 
 ,
 
 705 S.E.2d 360
 
 (2010) ;
 
 State v. Baublitz
 
 ,
 
 172 N.C. App. 801
 
 , 807,
 
 616 S.E.2d 615
 
 , 620 (2005) (officer's stop of defendant's vehicle was justified where he saw vehicle twice cross centerline).
 

 Here, the State's evidence established that Trooper Myers personally saw Defendant cross the double yellow line dividing the lanes of travel on Highway 32. This was sufficient to give him reasonable suspicion to stop Defendant's vehicle. Thus, the trial court's conclusion of law was supported by its findings of fact.
 

 Conclusion
 

 For the reasons stated above, we affirm the trial court's order denying Defendant's motion to suppress.
 

 AFFIRMED.
 

 Chief Judge McGEE and Judge TYSON concur.