# IN THE COURT OF APPEALS OF IOWA

No. 16-1184
Filed September 27, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JOHNNY LEE MCFADDEN, JR.,**
        Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Polk County, Mary Pat Gunderson,

Judge.


        Johnny McFadden appeals his conviction of possession of a controlled

substance with intent to deliver.  **REVERSED AND REMANDED.**


        Les M. Blair III of Blair & Fitzsimmons, P.C., Dubuque, for appellant.

        Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney

General, for appellee.


        Considered by Vaitheswaran, P.J., Doyle, J., and Mahan, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**VAITHESWARAN, Presiding Judge.**

Johnny McFadden appeals his conviction for possession of a controlled substance (marijuana) with intent to deliver. He argues the district court should have granted his motion to suppress evidence gained in a stop of his vehicle and search of a backpack inside the vehicle.

## I.    *Background Facts and Proceedings*

The pertinent facts may be gleaned from the suppression transcript, a police dash-camera recording of the traffic stop, and audio clips captured on an officer's body microphone. Those facts are as follows.

A "summer enforcement team" with the Des Moines Police Department followed a vehicle through several turns and stopped it in the driveway of a house for having "a film on the license plate" that "kind of interfered with [his] headlights and created a glare," rendering one of the letters "on the license plate . . . not clearly legible." An officer "[m]ade contact with the driver, Johnny McFadden, and asked for his driver's license, registration, and insurance." He observed two adult men inside and "a backpack wedged between the front seat passenger seat." The officer found the presence of the backpack "odd" because there were no children in the car. He wanted "to learn what was inside the backpack." The officer returned to his vehicle and performed a license and registration check. During his conversation with one of the other officers, he mentioned the backpack between the "two grown men" and wryly said he thought they had "been out of school for a while." The officer completed the record checks, which revealed that McFadden had a valid license and no outstanding warrants.

The officer returned to the vehicle McFadden was driving. His body microphone was off and the driver's side of the vehicle was out of view of the dash camera. According to the officer's testimony at the suppression hearing, he "asked [McFadden] for consent to look inside the backpack or asked him what was inside the backpack." McFadden "denied [him] consent." The officer characterized McFadden as "very nervous," with "the artery on the left side of his neck . . . pulsating," a sharp contrast to his "calm, cool, and collected" demeanor up to that point. He found this change in his demeanor "suspicious." At this point, the officer's partner jokingly chimed in, "[U]nless it contains a heater or a pound of drugs, you won't have anything to worry about." McFadden responded that the backpack contained six pounds of marijuana.

The officers removed McFadden from the vehicle, handcuffed him, and searched the vehicle and backpack. They discovered "six tightly compressed bricks of marijuana" in the backpack.

The State charged McFadden with possession of a controlled substance (marijuana) with intent to deliver. *See* Iowa Code § 124.401(1)(d) (2015).[1] McFadden filed a motion to suppress the evidence. Following the suppression hearing, the district court denied the motion.

McFadden waived his right to a jury trial and stipulated to a bench trial on the minutes of testimony. The district court found him guilty and imposed sentence. This appeal followed.

---

[1] An associated tax-stamp charge was dismissed.

## II.    Analysis

McFadden argues (1) the officers' initial stop of the vehicle was unsupported by probable cause or reasonable suspicion and (2) the stop was unconstitutionally prolonged. "'When a defendant challenges a district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right, our standard of review is de novo.'" *State v. Storm*, 898 N.W.2d 140, 144 (Iowa 2017) (quoting *State v. Brown*, 890 N.W.2d 315, 321 (Iowa 2017)).

### A.    Initial Stop

The Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution "prohibit unreasonable searches and seizures by the" State. *State v. Tyler*, 830 N.W.2d 288, 291 (Iowa 2013). "A traffic stop is unquestionably a seizure under the Fourth Amendment." *Id.* at 292. Generally, the traffic stop will be deemed reasonable "where the police have probable cause to believe that a traffic violation has occurred." *State v. Pals*, 805 N.W.2d 767, 773 (Iowa 2011) (quoting *Whren v. United States*, 517 U.S. 806, 810 (1996)).

The summer enforcement team stopped the vehicle driven by McFadden because of the grime-covered, partially-illegible license plate. A dirty plate constitutes a traffic violation. *See* Iowa Code § 321.38 ("Every registration plate shall at all times . . . be maintained free from foreign materials and in a condition to be clearly legible."). The violation afforded the officers probable cause to stop the vehicle. *See State v. Klinghammer*, No. 09-0577, 2010 WL 200058, at *5 (Iowa Ct. App. Jan. 22, 2010) (affirming finding of probable cause where "the officer was stopped directly behind the vehicle and observed that the license

plate was obstructed such that he could not read all of it"); *State v. Peden*, No. 08-1039, 2009 WL 606236, at *1 (Iowa Ct. App. Mar. 11, 2009) (same); *State v. Miller*, No. 02-0965, 2003 WL 22015974, at *1 (Iowa Ct. App. Aug. 27, 2003) (same).

### B. Prolonged Detention

The United States Supreme Court recently held "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 135 S. Ct. 1609, 1612 (2015). The Court continued, "A seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Id.* (alterations in original) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)); *accord In re Property Seized from Pardee*, 872 N.W.2d 384, 392 (Iowa 2015) (citation omitted). Relying on this holding, McFadden argues the officers prolonged the stop beyond the period reasonably necessary to complete its purpose and without reasonable suspicion. On our de novo review of this constitutional issue, we agree.

As noted, the stop was based on the license-plate violation. The officer who testified at the suppression hearing conceded as much, answering "Yes" to the question whether "the sole basis for the stop was" the illegibility of the plate. Based on the traffic violation, the officer could "determin[e] whether to issue a traffic ticket" and could make "ordinary inquires incident to the [traffic] stop," such as "checking the driver's license, determining whether there [were] outstanding warrants against the driver, and inspecting the automobile's registration and

proof of insurance." *Rodriguez*, 135 S. Ct. at 1615 (second alteration in original).[2]

At 9:24 p.m., the testifying officer asked if the occupants knew people inside the house where they were stopped. He received verbal confirmation from another officer that McFadden did indeed know the residents. By 9:26 p.m., the officer returned to his police cruiser and began running records checks. At 9:29 p.m., he received confirmation that McFadden "had a valid driver's license."

It is clear from this timeline that the purpose of the stop ended within five minutes. *See id.* at 1614 ("Because addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate th[at] purpose.'" (alteration in original) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983))); *Pardee*, 872 N.W.2d at 392. Again, the officer conceded as much. After confirming that the registration and warrant checks showed nothing problematic, he was asked, "So at that point, all of the information that you needed you had, and you had obtained as it related to the traffic stop itself. Would you agree with that . . . ?" The officer responded, "Yes." While he testified that he intended to write warning tickets for the license plate violation and McFadden's failure to have proof of insurance, the officer did not proceed with these tasks. *See Rodriguez*, 135 S. Ct. at 1614 ("Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed."); *Pardee*, 872 N.W.2d at 396 ("Trooper Vander Weil had all the information he

---

[2] The State argues the officer's request "for consent to search the backpack" was "an ordinary inquiry incident to [the traffic] stop." *See Rodriquez*, 135 S. Ct. at 1615. *Rodriguez* made a distinction between traffic-related inquiries and criminal interdiction. *See id.* The officer's request to search the backpack fell on the side of criminal interdiction.

needed to prepare warnings and had told the vehicle occupants he was only going to issue warnings" and "he could have gone back to his patrol car at that point and completed his traffic-related mission . . . ."). Instead, in his own words, he "went back up [to the vehicle] to make contact with [McFadden] to ask for consent to look inside the backpack." This task was entirely unrelated to the traffic violation. *Cf. Rodriquez*, 135 S. Ct. at 1615-16 (noting a dog sniff is "aimed at 'detect[ing] evidence of ordinary criminal wrongdoing,'" "[l]ack[s] the same close connection to roadway safety as the ordinary inquires," is "not fairly characterized as part of the officer's traffic mission," and "detour[ed] from that mission" (first alteration in original) (citations omitted)).

We recognize an officer "may conduct certain unrelated checks during an otherwise lawful traffic stop." *Id.* at 1615; *Pardee*, 872 N.W.2d at 393 (citation omitted). But "he [or she] may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Rodriguez*, 135 S. Ct. at 1615; *accord State v. Coleman*, 890 N.W.2d 284, 285 (Iowa 2017) ("[T]he stop must end when reasonable suspicion is no longer present."); *see also Arizona v. Johnson*, 555 U.S. 323, 333 (2009) ("An officer's inquiries into matters unrelated to the justification for the traffic stop do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop."). Reasonable suspicion requires the stopping officer to have "specific and articulable facts, which taken together with rational inferences from those facts," lead the officer "to reasonably believe criminal activity may have occurred." *State v. Tague*, 676 N.W.2d 197, 204 (Iowa 2004); *accord Illinois v. Wardlow*, 528 U.S. 119, 123

(2000). "Mere suspicion, curiosity, or hunch of criminal activity is not enough." *Tague*, 676 N.W.2d at 204; *accord Wardlow*, 528 U.S. at 123-24 ("The officer must be able to articulate more than an 'inchoate and unparticularized suspicion or "hunch" of criminal activity.'" (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968))).

The State argues "three circumstances" generated reasonable suspicion to ask to search McFadden's backpack: (1) the "high crime neighborhood," (2) "the series of turns in quick succession" before the vehicle pulled into the driveway, and (3) the backpack "in the car on a weekend night with two grown men and no children."

The high crime neighborhood did not alone generate reasonable suspicion. *See, e.g.*, *Wardlow*, 528 U.S. at 124 ("An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime."); *State v. Martinez-Felix,* No. 2 CA-CR 2016-0213, 2017 WL 3585072, at *6 (Ariz. Ct. App. Aug. 18, 2017) ("'[T]he fact that the encounter occurred in a high-crime neighborhood was insufficient,' given there was 'no indication that [Martinez–Felix] was involved in a crime or posed an imminent threat to the officers.'" (second alteration in original) (citation omitted)); *State v. Miller*, 795 S.E.2d 374, 379 (N.C. Ct. App. 2016) (stating "[officer's] observation of the vehicle in a high-crime area is not sufficient, either by itself or in conjunction with the other 'factors' identified by the State, to establish reasonable suspicion of criminal activity"), *appeal docketed*, 802 S.E.2d 732 (N.C. 2017). As for the number of turns made by the vehicle before arriving at its destination, the video reveals three turns in the span of a minute and McFadden's arrival at a home that an officer confirmed

was the home of a friend. The officer also testified McFadden drove "cautiously because there was a police officer behind him."

We are left with the backpack that initially "sparked" the officer's interest based on its position between "two grown men." If a backpack in a vehicle without children amounts to reasonable suspicion of criminal activity, a large segment of the traveling public could be subjected to warrantless searches. As one court stated, "While we are considerate of law enforcement's experience with backpacks in drug transactions, the very common occurrence of having a backpack in a vehicle and the multitude of innocent uses for a backpack in a vehicle renders the presence of a backpack in Spears's vehicle of little persuasive value." *United States v. Spears*, 636 F. App'x 893, 904 (5th Cir. 2016).

Anticipating a conclusion that the factors immediately following the stop may not have generated reasonable suspicion, the State falls back on McFadden's "response to [the officer's] backpack inquiry." McFadden's nervousness did not generate reasonable suspicion to justify the search of the backpack. First, if McFadden was nervous—a fact we cannot independently confirm given the position of the dash camera—his nervousness manifested itself after the officer unconstitutionally prolonged the stop. Second, assuming this factor may be considered in the reasonable suspicion analysis, McFadden was calm and forthcoming when he was removed from the vehicle and was placed in front of the camera, and the officer conceded he was very cooperative. *See Pardee*, 872 N.W.2d at 394 ("The video recordings of the stop also tend to dispel any impression that the occupants were unusually apprehensive . . . ."). Finally,

a vehicle occupant's nervousness on being stopped by a group of police officers should come as no surprise. *See United States v. Guerrero*, 374 F.3d 584, 590 (8th Cir. 2004) ("[I]t cannot be deemed unusual for a person to exhibit signs of nervousness when confronted by an officer."); *United States* v. *Beck*, 140 F.3d 1129, 1139 (8th Cir. 1998) (same).

We conclude none of the cited factors alone or in combination generated reasonable suspicion to ask McFadden about the backpack after the traffic-related purpose of the stop was completed. The officers unconstitutionally prolonged the detention.

In reaching this conclusion, we have considered the fact that only four minutes elapsed between completion of the traffic-related tasks and the search of the backpack. This time period was shorter than the "seven or eight minutes" that elapsed in *Rodriquez. See Rodriguez*, 135 S. Ct. at 1613, 1615-16. Even so, the Court rejected the notion that a *de minimus* violation is allowed. *Id.* The Court stated, "The Government's argument, in effect, is that by completing all traffic-related tasks expeditiously, an officer can earn bonus time to pursue an unrelated criminal investigation." *Id.* at 1616. "The reasonableness of a seizure, however, depends on what the police in fact do." *Id.* In this case, the officer sought consent to search the backpack after the purpose of the stop ended. This was impermissible whether it took four minutes or forty minutes. *See United States v. Ward*, No. 16-cr-00485-JST-1, 2017 WL 1549474, at *3-4 (N.D. Cal. May 1, 2017) ("[T]he fact that Officer Meads' questions may only have lasted a few minutes does not make them lawful. . . . [T]he search of Ward's person and car only occurred because of Officer Meads' impermissible questioning.

Especially taken together, the questioning and searches measurably extended the duration of Ward's traffic stop.").

But, even if the officer's request for consent to search the backpack was permissible, McFadden denied consent. At this juncture, the officer should have proceeded to issue the citations and should have terminated the stop. Instead, he continued to seek access to the backpack, eventually obtaining an admission from McFadden about its contents.

We have asked ourselves whether this admission vitiated the unconstitutional extension of the stop. We are persuaded it did not. To conclude otherwise would undermine the holding of *Rodriguez*. *See Ward*, 2017 WL 1549474, at *4 ("If the rule in *Rodriguez* . . . is to have any force, the police cannot prolong a driver's detention for the purpose of eliciting consent for a search to uncover ordinary criminal activity and then rely on that consent to excuse the length of the stop.").

This court addressed a similar situation in an opinion predating *Rodriguez*. *See generally State v. Scanlon*, No. 12-0741, 2013 WL 988785 (Iowa Ct. App. Mar. 13, 2013). There, an officer stopped a vehicle for an equipment violation, checked records, which uncovered a drug conviction, and asked the defendant if he could search the vehicle. The defendant responded, "No, I'd prefer you didn't look." *Id.* at *1. The officer then asked if had "weed" and the defendant responded, "Um, yea." *Id.* at *1-2. The officer searched the vehicle. *Id.* at *2.

The defendant argued the officer lacked reasonable suspicion to continue to detain him to conduct a narcotics investigation. *Id.* After noting that a seizure had to be limited in both scope and duration, this court stated the issue raised by

Scanlon "relate[d] to the scope of the seizure." *Id.* at *3. Nonetheless, we explained "if the scope or authority of the officer is exceeded, the duration of the seizure is unlawful." *Id.*; *cf. State v. Campbell*, No.15-1772, 2017 WL 706208, at *5-6 (Iowa Ct. App. Feb. 22, 2017) (distinguishing between scope and duration tests). We rejected the State's assertion that the traffic violation had yet to be resolved when the officer sought the defendant's consent to search the vehicle and concluded the defendant "had a right to refuse to consent to a search and did so," "[a]t that point or earlier, [he] should have been free to leave," and his "detention after this point was unreasonable." *Scanlon*, 2013 WL 988785, at *4. Although the court did not have the benefit of *Rodriguez*, *Scanlon* is persuasive authority for a conclusion that McFadden's admission following the unconstitutionally prolonged stop did not justify the search of his backpack.[3]

Because the officers unconstitutionally prolonged the traffic stop, evidence gained in the search should have been suppressed. We reverse the suppression ruling and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

---

[3] McFadden does not challenge the voluntariness of his consent.